Ellen ARMSTRONG and David J. Armstrong, Appellants,

v.

UNITED STATES of America, Appellee.

No. 18736.

United States Court of Appeals Ninth Circuit.

Jan. 21, 1964.

Rehearing Denied March 18, 1964.

John J. Bradley and Max Solomon, Los Angeles, Cal., for appellants.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief Criminal Section; and Jo Ann Dunne, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before JERTBERG, MERRILL and BROWNING, Circuit Judges.

JERTBERG, Circuit Judge:

Following trial to a jury, the appellants Ellen Armstrong and David J. Armstrong, husband and wife, were convicted on each count of a four count indictment. The indictment charged that appellants did willfully and knowingly attempt to evade and defeat a large part of the income tax due and owing by them to the United States of America for the calendar years 1956 through 1959, respectively, in violation of Title 26 U.S.C. § 7201, which in pertinent part provides:

> "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by

law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, * * *."

In each of the four years in question, appellants filed a joint income tax return reporting as taxable income only the earnings received by appellant David J. Armstrong, as a bus driver for the Los Angeles Metropolitan Transit Authority. Taxable income reported for the year 1956 was the sum of $2,047.13, and the amount of tax due thereon was $409.44; taxable income reported for the year 1957 was the sum of $1,101.25 and the amount of tax due thereon was $220.15; taxable income reported for the year 1958 was the sum of $1,365.80 and the amount of tax due thereon was $273.16; taxable income reported for the year 1959 was the sum of $1,450.02 and the amount of tax due thereon was $290.00.

The record discloses that during the tax years in question, appellants maintained no books or records of account.

Using the so-called "net worth plus expenditures" theory of proof, the government established a net worth increase for appellants for each of the years 1956 through 1959, to which increase of net worth for each year was added the non-deductible expenditures of appellants for each of said years. The following computations resulted:

### Calendar Year 1956

| | | |
|---|---|---|
| December 31, 1955—Net Worth | $12,609.57 | |
| December 31, 1956—Net Worth | $19,416.47 | |
| Net Worth Increase | | $ 6,806.89 |
| Expenditures not appearing in Net Worth Statement | | 6,017.08 |
| Net Worth Increase plus personal Expenditures equals Gross Income | | $12,823.97 |

### Calendar Year 1957

| | | |
|---|---|---|
| December 31, 1957—Net Worth | $26,626.24 | |
| Net Worth Increase | | $ 6,845.78 |
| Expenditures not appearing in Net Worth Statement | | 6,777.45 |
| Net Worth Increase plus personal Expenditures equals Gross Income | | $13,623.23 |

### Calendar Year 1958

| | | |
|---|---|---|
| December 31, 1958—Net Worth | $44,184.29 | |
| Net Worth Increase | | $17,922.05 |
| Expenditures not appearing in Net Worth Statement | | 4,437.20 |
| Net Worth Increase plus personal Expenditures equals Gross Income | | $22,359.25 |

### Calendar Year 1959

| | | |
|---|---|---|
| December 31, 1959—Net Worth | $51,530.12 | |
| Net Worth Increase | | $ 7,354.93 |
| Expenditures not appearing in Net Worth Statement | | 12,165.77 |
| Net Worth Increase plus personal Expenditures equals Gross Income | | $19,511.60 |

The appellants concede:

1) The accuracy of the net worth computations adduced by the government;

2) That the unreported gain in the net worth of appellants for the years covered by the indictment is as follows:

| | | |
|---|---|---|
| 1956 | — | $ 7,894.26 |
| 1957 | — | $ 9,687.35 |
| 1958 | — | $17,984.29 |
| 1959 | — | $15,029.02; and |

3) Assuming that the unreported gain in each year represents taxable income, the additional tax due for each of the years is as follows:

| | | |
|---|---|---|
| 1956 | — | $1,775.32 |
| 1957 | — | $2,184.89 |
| 1958 | — | $4,785.87 |
| 1959 | — | $3,792.87 |

As a likely source that the unreported increases in the appellants' net worth were derived from an undisclosed illicit business, that is, the sale of "pep" pills, the government introduced the testimony of four local law enforcement officers attached to the narcotics detail of the County Sheriff's Office and the narcotics division of the local Police Department.

One of these officers testified that on September 17, 1956 he took from the appellant, Ellen Armstrong, a bag containing some 650 5-milligram tablets referred to as benzedrine or amphetamine and a small quantity of marijuana. Appellant stated that she had purchased the contents of the bag for $10.00. Another officer testified that on October 27, 1956, he and another person with him purchased $30.00 worth of pills from the appellant, Ellen Armstrong; that shortly thereafter he returned to the appellants' apartment where both appellants were present; that he observed in appellant Ellen Armstrong's purse the $30.00 which he had paid her, plus twenty-three $1.00 bills. On a search of the apartment he recovered 500 amphetamine tablets, some dexedrine tablets, 103 amphetamine tablets, some nembutol capsules and some codeine tablets.

Another officer testified that on May 30, 1957 he searched the apartment of appellants while both were present and recovered several bottles containing various pills. He also found $1,031.00 in currency in a dress hanging in the closet. Appellant, Ellen Armstrong, stated that she had obtained the money from selling pills, with the exception of $400.00 which she had won at Las Vegas. Appellant Ellen Armstrong stated to the officer that she purchased the pills for $35.00 a bottle and that the usual sales price was ten pills for a dollar. Another officer testified that he searched the premises of the appellants on June 25, 1959. In the basement he found three sacks of twelve bottles of assorted pills. In the apartment he recovered several bottles of pills and an envelope containing $953.00 in currency.

As a part of the government's case, government agents testified as to pretrial interviews with the appellants in which appellants stated in substance: that their only source of income was from David Armstrong's employment as a bus driver; that they had only two bank accounts, consisting of a checking account in the name of Ellen Armstrong and a small savings account in trust for their son; later when confronted with the existence of other accounts, they admitted the existence of two other savings accounts under the name of Ellen Fletcher, an alias.

The net worth increases for each of the years in question was established by the following evidence: loans receivable, purchase of 1957 automobile in November 1956, loans payable, Trust Deeds of the approximate value of $4,400.00 purchased under the name of Helene Sabatelli, and net bank deposits of $54,570.07, of which cash deposits consisted approximately of 74%. These bank deposits were made to the various accounts above mentioned.

Proof of the non-deductible expenses consisted of the following evidence: living expenses, payment of insurance premiums, fees paid to an attorney in the amount of $9,300.00, bond premiums in the amount of $3,375.00, and other non-

deductible expenditures in the approximate amount of $675.00. While the record discloses that the bond premiums were, in fact, bail bond premiums, and that the expenditures in the approximate sum of $675.00 were, in fact, expended to pay fines for violations of the Business and Professions Code of the State of California, the District Judge refused to permit the government to show that the expenditures were made for bail bond premiums and for payment of fines.

On their own behalf appellants, in substance, testified: that the unreported increases in net worth adduced by the government comprise money which had been received from one Clifford Bell, which they deposited in the various accounts; that they did not believe that they owned the money delivered to them by Mr. Bell, or had responsibility for any income tax on such money or any interest it might earn while in the bank; that Mr. Bell was a tenant in the apartment building in which appellants lived; that he was single; that in 1956, Bell gave to appellant Ellen Armstrong from twelve to fifteen hundred dollars; that she eventually deposited it in the bank account under the name of Ellen Fletcher, an alias; that in 1957 she opened another savings account under the name of Fletcher, and thereafter made deposits in said accounts with moneys accumulated from funds given to her periodically by Bell; that at one particular time Bell gave her $3500.00; that she had no idea how much money Bell had given to them; that she kept no record of moneys received from Bell nor did she at any time give him any receipt; that money received from Bell was to be for safekeeping; that Bell never asked her where she kept the money; that Ellen Armstrong had sold some "pep" pills during the years in question, which cost her $10.00 to $15.00 for a bottle of 1,000 pills; that the selling price was ten pills for a dollar; that she made "some" money; that appellant David Armstrong deposited $1500.00 and $1300.00 to the various accounts of money give to him by Mr. Bell in 1960; that money given to them

by Bell had been used for personal purposes, such as payment of attorneys' fees in the amount of $1500.00 on one occasion, $1250.00 on another occasion, $2500.00 on another occasion, purchase of an automobile, $2500.00 to acquire a trust deed account in the name of Sabatelli; that Bell consented to the use of the money whenever appellants were in "difficulty"; that Mr. Bell passed away about a year and a half prior to the trial.

Appellants' specification of errors may be grouped as follows:

1. Insufficiency of the evidence to establish the currently taxable nature of the unreported increase in net worth;

2. Errors of the District Court in instructing, and refusing to instruct, the jury;

3. Errors of the District Court in the admission of testimony; and

4. Error committed by the government in advising the jury that appellants were engaged in illegal activity.

In approaching appellants' contentions, it is to be noted that appellants concede the mathematical accuracy of the yearly net worth computations adduced by the government, and the existence of the unreported increases in net worth as established by the government's proof. In this respect, appellants state in their brief:

"At the trial of this matter the government introduced evidence of net worth computations of appellants' income for the years covered by the indictment. Appellants did not contest the accuracy of such computations at the trial and they are not now raising such issue in presenting this appeal."

In Holland v. United States, 348 U.S. 121, at pages 137–138, 75 S.Ct. 127, at page 136, 99 L.Ed. 150 (1954), it is stated:

"Increases in net worth, standing alone, cannot be assumed to be attributable to currently taxable income. But proof of a likely source, from which the jury could reason-

ably find that the net worth increases sprang, is sufficient."

Hence, in order to sustain the burden of proof in a net worth case of income tax evasion, the government must produce evidence that increases in appellants' net worth for the tax years in question were attributable to currently taxable income, or must produce evidence from which the jury can infer that fact. Holland v. United States, supra; Kasper v. United States, 225 F.2d 275 (9th Cir. 1955).

In the instant case as a likely source that the increases in appellants' net worth for the tax years in question were attributable to currently taxable income, the government introduced proof that the increases in appellants' net worth were attributable to the undisclosed illicit business of selling "pep" pills.

 Illegal gain as well as legal gain constitutes taxable income. James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961); Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833 (1952); Beck v. United States, 298 F.2d 622 (9th Cir. 1962), C.D. 370 U.S. 919, 82 S.Ct. 1558, 8 L.Ed.2d 499.

Appellants only reported source of income during the tax years in question was wages derived from appellant David Armstrong's employment as a bus driver. No contention is made that they received, during the tax years in question, any money or property by way of gift, inheritance, or other source except that some unreported income was received from the sale of "pep" pills. Their explanation of apparent increases in net worth was that such increases were comprised of money given to them by Bell during the tax years in question, for safekeeping. We must assume from the jury's verdict that the jury placed no credence in such explanation.

A careful examination of the transcript in this case discloses abundant evidence to support the implied finding of the jury that the illicit sale of "pep" pills was a likely source of the unreported increase in net worth, and represent currently taxable income. In a net worth case, the government need not prove the specific source of proved increases in net worth in order to demonstrate their tax character as income; it is sufficient for it to prove a "likely source" from which the jury could reasonably find that the net worth increases sprang. Holland v. United States, supra; United States v. Sclafani, 265 F.2d 408 (2nd Cir. 1959), C.D. 360 U.S. 918, 79 S.Ct. 1436, 3 L. Ed.2d 1534.

Appellants complain of the refusal of the District Court to give to the jury two instructions proffered by the appellants. One of these proffered instructions charged the jury that it could not return a verdict of guilty on circumstantial evidence alone, or when the case of the government rests substantially on circumstantial evidence unless the proved circumstances are not only consistent with the hypothesis that the defendants are guilty of the crime but are irreconcilable with any other rational conclusion. In Strangway v. United States, 312 F.2d 283, at page 285 (9th Cir. 1963), we held that the refusal to give such instruction is not error, and stated:

"The proposed instruction is not in accord with the currently-accepted rule in the federal courts. See Holland v. United States, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150; Bolen v. United States, 9 Cir., 303 F.2d 870, 874."

We find no error on the part of the District Court in refusing the proffered instruction.

In the other proffered instruction refused by the District Court the instruction charged the jury that if the evidence is susceptible of two constructions, each of which appears to be reasonable, and one of which points to guilt and the other to innocence, the jury must reject the construction which points to guilt.

The record discloses that the District Court fully instructed the jury on the presumption of innocence, on the require-

ment that guilt be established beyond a reasonable doubt, on the meaning of the term "reasonable doubt", on circumstantial and direct evidence, and informed the jury that in respect to either direct or indirect evidence the defendants' guilt must be established beyond a reasonable doubt from all of the evidence in the case. We find no error in refusing to give the proffered instruction.

■ Appellants also claim error in the giving by the District Court of the following instructions:

1. "The law makes no distinction between taxable income which is lawful and that which is unlawful in determining liability for income taxes, with the exception that embezzled funds are not to be considered."

2. "It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. So unless the contrary appears from the evidence, the jury may draw the inference that the accused intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused."

In considering the first quoted instruction, we note that under decisions of the Supreme Court embezzled funds would not constitute taxable income during the tax years in question. James v. United States, supra; Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752 (1946); Beck v. United States, supra.

While appellants proffered no instruction on the subject of embezzlement, they contend that the instruction given was ambiguous in that it does not conclude whether embezzled funds are to be considered nontaxable or taxable income, and that the jury should have been clearly instructed that "embezzled funds are not to be considered taxable income." We

find no prejudicial error. While more precise language might have been employed, we believe that the meaning conveyed by the instruction was that illegal income, unless derived from embezzlement, is taxable income. We find in the record slight, if any, evidence that appellants embezzled any funds from Bell. In fact, their testimony is that funds entrusted to them by Bell, and used for personal purposes, was with Bell's knowledge and permission.

■ In respect to the second quoted instruction, appellants contend:

"This instruction advises the jury that they may find the accused guilty from the circumstances that they filed income tax returns in which their income was understated, unless the contrary appears from the evidence.

"Appellants contend that in this type of prosecution intent is an essential element to be alleged and proved as a fact, and may not rest on a presumption. It is for the jury, under all the circumstances, to say whether the intent required by the statute to constitute the offenses existed in the minds of the accused. The charge challenged by appellants withdraws from the jury the consideration of whether the appellants intended to evade their income tax liability."

It is to be noted that the court did not instruct that unlawful intent must be presumed from the fact that they filed income tax returns in which their income was understated. The instruction makes no reference to a presumption relating to intent, but speaks only of permissible inferences. The instruction cannot be considered in isolation but must be considered in context with all of the instructions. We have reviewed the instructions given and among them note the following:

"[s]pecific intent must be proved before there can be a conviction";

"Specific intent, as the term itself suggests, requires more than a mere

general intent to engage in certain conduct.";

"A person who knowingly does an act which the law forbids, or knowingly fails to do an act which the law requires, intending with bad purpose either to disobey or to disregard the law, may be found to act with specific intent.";

"An act or failure to act is done knowingly if done voluntarily and purposely, and not because of mistake or inadvertence or other innocent reason.";

"An essential element of the offense with which the defendants are charged in each count is willfulness. An act is done 'willfully' if done voluntarily and purposely and with the specific intent to do that which the law forbids. Willfulness implies bad faith and evil motive. You must find some element of evil motive and want of justification on the part of the defendant.";

"With regard to the offense charged in the counts of the Indictment, if you do not find that specific and positive purpose and evil intent to evade a tax obligation known to be due on the part of the defendants has been proved by the Government beyond a reasonable doubt, then you must find the defendants not guilty.";

and that an essential element required to be proved in order to establish the offense charged was the fact that the defendants in some manner willfully attempted to evade or defeat the additional tax "with the specific intent to defraud the Government of such additional tax." We find no reversible error in the giving of the instruction. See Bateman v. United States, 212 F.2d 61 (9th Cir. 1954); Baker v. United States, 310 F.2d 924 (9th Cir. 1962), C.D. 372 U.S. 954, 83 S.Ct. 952, 9 L.Ed.2d 978.

■ Appellants contend that the testimony of the four law enforcement officers, above summarized, was too meager to establish a likely source of the unreported increases in net worth, and despite its relevancy should not have been admitted into evidence over appellants' objection because of its prejudicial character in showing appellants were engaged in an illicit activity. As previously noted, we are satisfied that there is abundant evidence in the record of a likely source from which the jury could reasonably find that the net worth increases sprang. Appellants concede that during the course of the trial the District Judge repeatedly admonished the jury that they were not to consider whether appellants were engaged in some illegal activity. Attention is also called to the fact that the jury was instructed not to consider, in their deliberations, whether the sale of the "pep" pills was legal or illegal.

We believe that the testimony was relevant, pertinent and highly probative in establishing the taxable nature of the annual increases in net worth, and that the government is not precluded from showing a likely source of the increase in a net worth prosecution because the proof establishes criminal activity on the part of the accused. United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943); Rutkin v. United States, supra; United States v. Brott, 264 F.2d 433 (2nd Cir. 1959), C.D. 359 U.S. 985, 79 S.Ct. 941, 3 L.Ed.2d 933.

On redirect examination by the government, one of the law enforcement officers was asked the question:

"Q Of your personal knowledge, though, can someone, a member of the jurors, (sic) engage in the sale of these drugs in the State of California?

"A Not legally."

Appellants contend that the question and answer were not relevant to establish a "likely source" and that the effect of the testimony was to prejudice the jury and deny them a fair trial. Appellants made no objection to the question at the time it was asked, nor did they move to strike the answer. Neither did they request a limiting instruction as to the purpose for which such evidence might be considered

by the jury. On its own volition the District Court informed the jury that "this evidence has been offered to show a likely source of income. Whether there was any crime committed or not you are not concerned with." Under these circumstances and the context of the entire case, we are of the view that no prejudice resulted to the appellants.

■ Finally, appellants object to the admission into evidence, over their objection of hearsay, of the testimony of the law enforcement officer participating in the search of appellants' apartment in June, 1959. During the search the telephone rang. In the presence of both appellants, the officer answered the telephone. He testified that he heard a male voice ask,

"'Is this Dave?'

"I said, 'Yes. What can I do for you?'

"The male voice said, 'I want to pick up a half.'

"I said, 'A half of what, a half a roll?'

"The male voice said, 'Hell, no. I want to pick up a half bottle of bennies.'" [a type of "pep" pill].

Appellants contend that the testimony received was hearsay, highly prejudicial to them, and operated to deny them a fair trial. The government contends that the evidence was admissible "as competent circumstantial evidence showing the nature of the premises and that some or all of the persons found therein were engaged in the business of selling pills." In Reynolds v. United States, 225 F.2d 123 (5th Cir. 1955) C.D. 350 U.S. 914, 76 S.Ct. 197, 100 L.Ed. 801, the defendants were convicted on five counts, each charging a gambling tax offense by engaging in the business of accepting wagers as defined in 26 U.S.C. § 3290, in violation of 26 U.S.C. § 2707(c), as made applicable by 26 U.S.C. § 3294(c). At page 131, of 225 F.2d, it is stated:

"The evidence of the telephone conversations received by the raiding officers was competent, we think, as circumstantial evidence going to show the operation of a lottery."

While not free from doubt, we think that the testimony of the officer was a relevant circumstance tending to show that the premises was a place wherein the occupants were engaged in selling "pep" pills. In any event we are unable to agree that in the context of the entire trial the testimony was of such gravity as to constitute reversible error.

The judgment of conviction is affirmed.