**Lesly COHEN, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 20807.**

United States Court of Appeals
Ninth Circuit.

May 5, 1967.

Rehearing Denied June 20, 1967.

John V. Lewis, Richard H. Foster, San Francisco, Cal., for appellant.

Cecil F. Poole, U. S. Atty., San Francisco, Cal., Louis Scalzo, John C. Keeney, Attys. Crim. Div., Dept. of Justice, Washington, D. C., for appellee.

Before HAMLIN, MERRILL and BROWNING, Circuit Judges.

BROWNING, Circuit Judge.

Appellant was convicted on two counts of an indictment charging knowing utilization of interstate telephone facilities for the transmission of wagers and wagering information in violation of 18 U.S.C. § 1084(a) (1964).[1]

The first count alleged that during the period September 16, 1962, to December 15, 1962, appellant knowingly used interstate telephone facilities to transmit information from Las Vegas, Nevada, to San Francisco, California, for the purpose of assisting in placement of a wager on a San Francisco Forty Niner's football game. A bill of particulars specified that this count involved a number of telephone calls between appellant and two bettors, Raymond Syufy and Adolph Schuman.

The second count, as amplified by the bill of particulars, alleged a telephone call by Syufy to appellant on September 25, 1962, placing a wager on the Sonny Liston-Floyd Patterson heavyweight boxing match.

I

Appellant contends that the first count is duplicitous because the bill of particulars alleges that more than one telephone call and more than one bettor were involved. He argues that he was prejudiced by the form of the charge because the bettor Syufy was unable to identify the person with whom he spoke on the telephone, and the proof as to these calls was therefore inadequate to support a verdict against appellant, yet the jury may have based its verdict upon this proof.

We think there was sufficient circumstantial evidence to permit the jury to conclude that appellant was the recipient of the Syufy calls despite Syufy's inability to identify appellant's voice. In any event, the first count charged but a single offense of knowingly transmitting wagering information by interstate telephone between the points, during the period, and for the purpose specified. It was not rendered duplicitous because the bill of particulars and subsequent proof related to a series of calls, even though each might have been alleged as a separate violation.[2] Korholz v. United States, 269 F.2d 897, 900–901 (10th Cir. 1959); Hanf v. United States, 235 F.2d 710, 715 (8th Cir. 1956). The government is to be commended rather than criticized for treating all such calls for the same purpose during a brief period as one crime subject to a single statutory penalty.

II

Appellant argues that the evidence was insufficient to show his awareness that the telephone calls originated outside Nevada. Schuman and Syufy testified that appellant knew they had resided in the San Francisco area for many years. Both also testified that they had made numerous telephone calls over a period of years from the San Francisco area to appellant in Las Vegas (including the calls identified in the bill of particulars) to obtain gambling information and to place bets, and that both had arrangements with appellant to settle their accounts periodically when they went to Las Vegas. A third witness testified to a similar course of continuing gambling activity with appellant using interstate telephone facilities. He further

---

1. 18 U.S.C. § 1084(a) declares that:
 Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitled the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined not more than $10,000 or imprisoned not more than two years, or both.

2. Katz v. United States, 369 F.2d 130, 135 (9th Cir. 1966). See also Sagansky v. United States, 358 F.2d 195, 201 (1st Cir. 1966).

testified that when he called appellant he identified himself by giving his own name and also the name of the city from which he was calling (Salt Lake City, Utah); and that he settled his account with appellant periodically by mailing remittances to appellant from his out-of-state address. The jury could have concluded from this evidence that the calls in question involved the knowing use by appellant of interstate telephone facilities in the course of a continuing interstate gambling business.

## III

Appellant objected to the following passage in the instructions:

As a general rule, it is reasonable to infer that a person ordinarily intends all the natural consequences of acts knowingly done or knowingly omitted. So unless the evidence in the case leads the jury to a different or contrary conclusion, the jury may draw the inference and find that the accused intended all of the natural and probable consequences which one standing under like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused.

■ Although repeatedly criticized,[3] an instruction of this general tenor continues to appear in charges to the jury. Its use is an invitation to reversal. "Despite its ancient vintage, see Agnew v. United States, 165 U.S. 36, 53, 17 S.Ct. 235, 41 L.Ed. 624 (1897), utterance of the quoted platitude serves no useful purpose, since insofar as the statement has logical validity the jury would know it anyhow" and, more important, it may, in some contexts, mislead the jury. United States v. Barash, 365 F.2d 395, 402 (2d Cir. 1966). The jury may mistakenly believe that it is permissible to infer

specific knowledge or intent solely from the doing of a particular act, without regard to the totality of circumstances; or that the occurrence of the particular act shifts the burden of proof of knowledge or intent from the prosecution to the defense; or that the question is whether a reasonable man in similar circumstances would have had the requisite knowledge or intent, rather than whether the accused actually had it. United States v. Barash, supra; Mann v. United States, 319 F.2d 404, 409 (5th Cir. 1963). Cf. Chappell v. United States, 270 F.2d 274, 279–280 (9th Cir. 1959); Bloch v. United States, 221 F.2d 786, 788 (9th Cir. 1955); Wardlaw v. United States, 203 F.2d 884, 887 (5th Cir. 1953).

■ Nonetheless, where the reviewing court is able to conclude from an examination of the instructions as a whole that a passage of this kind "could not have been prejudiced or have misled the jury," the conviction will not be reversed. Sherwin v. United States, 320 F.2d 137, 151 (9th Cir. 1963). See also United States v. Releford, 352 F.2d 36, 40 (6th Cir. 1965); United States v. Denton, 336 F.2d 785, 788 (6th Cir. 1964); Armstrong v. United States, 327 F.2d 189, 195 (9th Cir. 1964); Turf Center Inc. v. United States, 325 F.2d 793, 797 n. 5 (9th Cir. 1963); Baker v. United States, 310 F.2d 924, 931 (9th Cir. 1962); Legatos v. United States, 222 F.2d 678, 687 (9th Cir. 1955); Bateman v. United States, 212 F.2d 61, 69–70 (9th Cir. 1954). Other such cases are collected in *Barash*, supra, 365 F.2d at 402.

■ We think this is true of the present case. Each of the possible areas of confusion to which we have referred was the subject of direct and specific instructions which appellant has not challenged. Viewing the instructions as a whole, we think the jury was not misled.

---

3. United States v. Barash, 365 F.2d 395, 402–403 (2d Cir. 1966); *United States v. Releford*, 352 F.2d 36, 40 (6th Cir. 1966); United States v. Denton, 336 F. 2d 785, 788 (6th Cir. 1964); Mann v. United States, 319 F.2d 404, 409 (5th Cir. 1963); Chappell v. United States, 270 F.2d 274, 279–80 (9th Cir. 1959); Bloch v. United States, 221 F.2d 786, 788 (9th Cir. 1955); Wardlaw v. United States, 203 F.2d 884, 887 (5th Cir. 1953).

Appellant did not object to the instruction in question as misleading; he simply asserted, "I believe in a case of this character it is improper." Had appellant raised a question on this score there can be little doubt that the district court would have supplemented the instructions to remove any remote possibility of confusion.

■ The gravest criticism that can be leveled at the passage in question in the circumstances of this case is that its language is general and abstract and its meaning unclear. This, alone, is not ground for reversal where the instructions taken together fairly submit the case to the jury.[4]

## IV

The court instructed the jury that there was a rebuttable presumption that appellant knew what the law forbade.[5] Appellant objected because "it was a new law and enacted so closely to the time of the alleged offense."

■ The threshold question is whether knowledge of the statutory prohibition is an element of the offense under 18 U.S.C. § 1084. If it is not, the instruction would be harmless even if

wrong. Whether knowledge of illegality is an ingredient of a statutory offense depends upon the legislative intent. United States v. Balint, 258 U.S. 250, 251–252, 42 S.Ct. 301 (1922).[6]

Congress knew that betting on sporting events was lawful in Nevada, and anticipated that it would continue to be. Congress also contemplated that interstate telephone facilities would continue to be used for the transmission into Nevada of information useful in gambling.[7] In Nevada, apparently, the conduct prohibited by section 1084(a) would be a neutral act, free of culpability unless the actor were aware of the statutory prohibition. Yet a violation of section 1084(a) is punishable as a felony, subject to two years' imprisonment and a fine of ten thousand dollars.

■ If knowledge of illegality is an element of the section 1084(a) offense, those innocent of intentional wrongdoing are afforded a defense. And if at the same time a rebuttable presumption of such knowledge is recognized, the requirement of knowledge will not substantially impede accomplishment of the statute's purpose to discourage professional interstate gambling.[8] In contrast with

4. Cf. Lessig v. Tidewater Oil Co., 327 F. 2d 459, 466 n. 13 (9th Cir. 1964). "Although instructions need not be framed in terms of the specific facts in all cases, it would seem appropriate to do so where, as here, the abstract legal principles are not self-explanatory to a lay jury, and the facts to which they must be applied are complex" (citations omitted).

5. The court said:
 It is not necessary for the prosecution to prove knowledge of the accused if the particular act or failure to act is in violation of the law. Unless and until outweighed by evidence in the case to the contrary, the presumption is that every person knows what the law forbids and what the law requires to be done. However, evidence that the accused acted or failed to act because of ignorance of the law is to be considered by the jury in determining whether or not the accused acted or failed to act with a specific intent as charged. (R. 547–548)

6. Subject to the constitutional limitation that failure to act may be punished as a

felony only if there is proof that the accused knew, or probably knew, there was a duty to act and a penalty imposed for failure to discharge the duty, or was aware of circumstances which should have moved him to inquire. Lambert v. People of State of California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957).

7. Subsection (b) of 18 U.S.C. § 1084, which exempts from the statute the transmission of information on a sporting event from a state where betting on that event is legal to a state in which such betting is legal was adopted with Nevada specifically in mind. H.R. 967, 1961 U.S. Code Cong. & Admin.News, 87th Cong., 1st Sess. 1961, 2631, 2632–2633.

8. As the government states, "Section 1084 was not designed to be applicable to isolated acts of wagering by individuals not engaged in the business of wagering." "The legislative history of Section 1084 clearly indicates that the purpose of the legislation was to curb the activities of the professional gambler."

the occasional or social bettor, the professional gambler will find it difficult to go forward with evidence of ignorance of the law pertaining directly to his business, and even more difficult to prevail on that issue with the fact finder.

We hold, therefore, that Congress intended knowledge of the statutory prohibition to be an element of the offense under section 1084(a),[9] and that the district court properly instructed the jury that there is a rebuttable presumption that the accused in fact had knowledge of the law. Edwards v. United States, 334 F.2d 360, 366–368 (5th Cir. 1964).

## V

The court properly denied appellant's request for an instruction that "personal bets with personal friends unconnected with the gambling business are not a violation of the statute."

The instructions given made it amply clear that section 1084 applies only to persons "engaged in the business of betting or wagering." Wagers otherwise within the statute are not excluded because contracted with friends. And there was no basis in the evidence for a contention that the wagers in question were unconnected with appellant's professional gambling activity.

## VI

Appellant objected because the court's instructions permitted the jury to find that appellant was "engaged in the business of betting or wagering" within the meaning of 18 U.S.C. § 1084(a), even though he accepted wagers in "behalf of someone else," rather than as a principal.

Appellant points out that a person is "engaged in the business of accepting wagers" within the meaning of 26 U.S.C. § 3285(d) (Int.Rev.Code of 1939) only "if he is engaged as a principal who, in accepting wagers, does so on his own account." H.R.Rep. No. 586, 82d Cong., 1st Sess. 56, U.S.Code Cong. & Admin.News 1951, p. 1781.[10] See United States v. Calamaro, 354 U.S. 351, 356, 359–360, 77 S.Ct. 1138, 1 L.Ed.2d 1394 (1957). Appellant argues that the same construction should be placed on 18 U.S.C. § 1084(a), and requested instructions requiring the government to prove that appellant had a proprietary interest in the operation of the wagering business in which he was engaged, and shared in its profits and losses. These instructions were properly refused.

26 U.S.C. § 3285(a) and (b) (1) impose a 10 per cent excise tax on wagers on sporting events placed with persons "engaged in the business of accepting such wagers." Subsection (d) provides that "[e]ach person who is engaged in the business of accepting wagers shall be liable for * * * and shall pay the tax * * * on all wagers placed with him."[11] It is of course appropriate that an excise tax should fall upon the principal in the transaction taxed, rather than upon persons who may act on his behalf, and the legislative history (quoted in United States v. Calamaro, supra, 354 U.S. at 356, 77 S.Ct. at 1142), and Internal Revenue Regulations (Tax Reg. § 44.4401–2(b)), are to that effect.

The tax statute distinguishes between principals, who are liable for the excise tax, and persons "engaged in receiving wagers for or on behalf of any person so liable." Section 3290.[12] The latter

9. See United States v. Crosby, 294 F.2d 928, 938–939 (2d Cir. 1961), and Note, 11 De Paul L.Rev. 329 (1962); Durbin, Mens Rea Reconsidered, 18 Stan.L.Rev. 322, 358–65, 380–83 (1966); Packer, Mens Rea and the Supreme Court, 1962 Sup.Ct.Rev. 107, 109, 127 (1962); Hall, Ignorance in Criminal Law, 33 Ind.L.J. 1, 35–36 (1957). Compare United States v. Hawthorne, 356 F.2d 740 (4th Cir. 1966); Burks v. United States, 287 F.2d

117, 125 (9th Cir. 1961); Reyes v. United States, 258 F.2d 774, 783–84 (9th Cir. 1958).

10. Re-enacted in the Int.Rev.Code of 1954. It may now be found at 26 U.S.C. § 4401 (c).

11. Supra, note 10.

12. Int.Rev.Code of 1939, re-enacted in the Int.Rev.Code of 1954. It may now be found at 26 U.S.C. § 4411 (1964).

are made subject to an occupational tax (section 3290), and are required to register both their own names and residences and the names and residences of their principals. Section 3291(a) (1), (3).[13] "[T]hese provisions, as well as the occupational tax itself, were designed at least in part to facilitate collection of the excise tax." United States v. Calamaro, supra, 354 U.S. at 357, 77 S.Ct. at 1142.

The tax statute thus expressly distinguishes principals from agents, and the difference serves an obvious purpose in the statutory scheme.

■ In contrast, the language of 18 U.S.C. § 1084 makes no distinction between those engaged in the business of gambling on their own behalf and those engaged in that business on behalf of others. Moreover, the purpose of section 1084 is better served by imposing the duties and penalties upon those who would use communications facilities in the day-to-day operation of the gambling business, and who would therefore be best able to comply.[14] There is no unfairness in doing so. Finally, as appellant himself points out, the enactment

of section 1084(a) was induced in part by congressional disappointment with the failure of the taxing statute to inhibit organized gambling.[15] It would be contrary to Congress's purpose to diminish the effectiveness of 18 U.S.C. § 1084 by borrowing a narrow construction of its terms from the earlier tax measure.

## VII

Appellant challenges the admission of the testimony of witnesses Drossman, Hochfeld, and Stead.

■ All three testified that they placed wagers with appellant on a regular basis, settling periodically for their losses. This testimony was relevant to the issue of whether appellant was "engaged in the business of betting or wagering." [16]

■ Drossman and Stead testified that both before and after September 13, 1961—the effective date of 18 U.S.C. § 1084—they placed bets with appellant by interstate telephone in circumstances indicating that appellant knew the calls were interstate. This testimony was relevant to show a

13. Int.Rev.Code of 1939, re-enacted in the Int.Rev.Code of 1954. It may now be found at 26 U.S.C. § 4412(a) (1), (3) (1964).

14. The government advanced similar argument in support of a broad interpretation of 26 U.S.C. § 3290, arguing that limited coverage "will defeat the policy of the statute because its enactment was 'in part motivated by a congressional desire to suppress wagering.'" United States v. Calamaro, 354 U.S. at 358, 77 S.Ct. at 1143. The Court rejected the suggestion on the ground that "The statute was passed, and its constitutionality was upheld, as a revenue measure, United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754, and, apart from all else, in construing it we would not be justified in resorting to collateral motives or effects which, standing apart from the federal taxing power, might place the constitutionality of the statute in doubt." Ibid. We are not faced with this problem in interpreting 18 U.S.C. § 1084.

15. Appellant states:
"At the opening of the hearings before the United States Senate on Tues-

day, October 22, 1961, before the Subcommittee on Investigations of the Committee on Government Operations, United States Senate, the Chairman, Senator John L. McClellan, stated 'One important aspect in this situation is that the wagering stamp tax law has been a disappointment from the viewpoint both of collecting revenue and of getting rid of bookmakers.' Mortimer M. Caplin, Commissioner of Internal Revenue, testified at length concerning the experience with the wagering tax law. He also indicated that the Internal Revenue Service did not desire the service involved 'in what are essentially policing procedures distinct from revenue collections' Page 95 of hearings. The report of the Committee on Government Operations of the United States Senate, Report 1310, is replete with reference to the wagering tax law and the difficulties of enforcement thereunder." (Appellant's Opening Brief, p. 34.)

16. Appellant's assertion that the government did not rely upon this theory of admissibility at trial is not supported by the record. See Tr. 217, 515, 518.

"scheme or plan" by appellant to conduct a gambling business using interstate telephone facilities, and thus to show that the violations charged were deliberate and not the result of accident or inadvertence. True, the testimony disclosed commission by appellant of offenses other than those charged, but we think the trial court could properly conclude that the possible prejudice to appellant from its admission did not outweigh the value of the evidence to the government's case. Theobald v. United States, 371 F.2d 769 (9th Cir. 1967); DeVore v. United States, 368 F.2d 396 (9th Cir. 1966).

Finally, Hochfeld testified that he engaged in the same course of activity with appellant prior to September 13, 1961, but that appellant refused to receive his wagers by interstate telephone after that date on the express ground that it was illegal to do so. This testimony was relevant to the issue of appellant's knowledge of the statute's prohibitions.

## VIII

Appellant asserts that cross-examination of Schuman designed to show that Schuman's testimony was induced by a hope or promise of immunity was improperly restricted.

Appellant was permitted to question Schuman directly on this subject, and Schuman testified that he had neither sought nor been given immunity.

Appellant attempted to question Schuman about a statement both Schuman and his attorney allegedly made to an Internal Revenue agent that they would aid the government if "given the proper immunity." Some confusion developed in the exchange among appellant's counsel, Schuman, and the court, and the court was left with the impression that the statement was made by Schuman's attorney alone, and not by Schuman, and on that ground mistakenly refused to permit appellant to question Schuman about it.

At a later point in the trial, however, the government stipulated to Schuman's statement to the Internal Revenue agent. Appellant therefore had the benefit of the impeachment value of this prior inconsistent statement.[17] We are satisfied that appellant was not substantially prejudiced by the court's mistaken ruling.

## IX

Appellant filed a motion to suppress evidence under Rule 41(e). The motion alleged that agents of the government obtained evidence against appellant by dealing with appellant's mail in a manner violative of 18 U.S.C. §§ 1701–1703, and by intercepting telephone communications by appellant and others in violation of 47 U.S.C. § 605.

The government filed the affidavit of an Assistant United States Attorney categorically denying that any wiretapping had occurred, but admitting that a "mail cover" had been placed upon appellant's incoming mail. Affidavits of Post Office employees were filed describing the latter procedure in detail. According to these affidavits the mail carriers assigned to deliver appellant's mail recorded, from the outside of the envelope, the name of the sender, the return address, postmark, and class; but appellant's mail was not opened, no attempt was made to ascertain its contents, and it was neither withheld, delayed, nor delivered to any place other than the address appearing thereon.

Appellant's counsel filed his personal affidavit stating that on April 22, 1963, his firm mailed a letter to appellant containing confidential legal advice "and this letter presumably was intercepted by agents of the Internal Revenue Service." He further stated that in the course of his investigation of the case, he interviewed "numerous individuals" who had been interviewed by agents of the Internal Revenue Service; that these individuals were asked questions by the agents "concerning correspondence and

17. Appellant's assertion that this stipulation was not submitted to the jury is not borne out by the record. Tr. 511.

telephone calls made" to appellant and "the content of these questions was such that in order to ask the questions, the Internal Revenue Service agents must have been familiar with the content of the correspondence and with the content of the telephone conversations to which the questions referred."

The district court denied the motion without an evidentiary hearing. The court held that appellant's allegations consisted of "generalizations and blanket charges," and that "These conclusionary assertions are patently insufficient to create an issue. In view of the categorical denial by the government and the complete absence of any evidentiary material to give support to the defendant's charges, no issue has been presented which requires a further hearing, or the taking of testimony for the determination of the motion." United States v. Cohen, 241 F.Supp. 269, 270-271 (N.D. Calif.1965). The court also held 'that the type of "mail watch" conceded by the government did not violate the statutes or the Constitution.

Appellant argues that the district court erred both in denying the motion without a hearing, and in sustaining the mail watch described in the government's affidavits.

 Appellant's second point is readily disposed of. Conceding that the language of the statutes might support a contrary result, we accept the uniform interpretation reflected in the decisions of three appellate courts,[18] and in long continued administrative practice known to Congress [19] that a "mail cover" of the type admitted here does not violate the provisions of 18 U.S.C. §§ 1701-1703. And we also find no merit in appellant's constitutional argument based primarily upon Lamont v. Postmaster General, 381 U.S. 301 (1965), for we think the "mail cover" involved here does not present a comparable inhibition upon the exercise of First Amendment rights.

 Nor do we agree with appellant that an evidentiary hearing was necessary.

 Rule 41(e), Federal Rules of Criminal Procedure, provides that the court "shall receive evidence on any issue of fact necessary to the decision of the motion." As this language implies, "evidentiary hearings should not be set as a matter of course, but only when the petition alleges facts which if proved would require the grant of relief." Grant v. United States, 282 F.2d 165, 170 (2d Cir. 1960). Suppression may be improper for a reason of law appearing on the face of the motion. Moreover, factual allegations which are general and conclusory or based upon suspicion and conjecture will not suffice, for "claims that taint attaches to any portion of the Government's case must satisfy the trial court with their solidity and not be merely a means of eliciting what is in the Government's possession before its submission to the jury." Nardone v. United States, 308 U.S. 338, 342, 60 S.Ct. 266, 84 L.Ed. 307 (1939).[20]

---

**18.** Canaday v. United States, 354 F.2d 849, 856 (8th Cir. 1966); United States v. Schwartz, 283 F.2d 107 (3d Cir. 1960); United States v. Costello, 255 F.2d 876, 881-882 (2d Cir. 1958).

**19.** Long, The Right to Privacy, 10 St. Louis U.L.J. 1, 14 (1965).

**20.** See generally Comment, Procedural Problems of a Motion to Suppress, 1 U.S.F.L.Rev. 189 (1966).

Factual allegations in motions and supporting affidavits were found insufficient to meet the *Nardone* standard of "solidity" in United States v. Stonehill, 254 F. Supp. 1003, 1005 (S.D.N.Y.1966); United States v. Pardo-Balland, 229 F.Supp. 473,

475 (S.D.N.Y.1964); United States v. Casanova, 213 F.Supp. 654, 657 (S.D. N.Y.1963); United States v. Weinberg, 108 F.Supp. 567 (D.Col.1952); United States v. Flynn, 103 F.Supp. 925, 930 (S.D.N.Y.1951); United States v. Fujimoto, 102 F.Supp. 890, 897 (D.Haw. 1952).

A pretrial hearing has also been denied as premature where the evidence sought to be suppressed was not specifically identified, and the government represented that it would not offer at trial any evidence illegally secured. United States v. Kenner, 36 F.R.D. 391, 393-394 (S.D. N.Y.1965); United States v. Pardo-Balland, 229 F.Supp. 473, 475 (S.D.N.Y.

The motion "may be supported by affidavit" (Fed.R.Crim.P. 47), and it has been held that the court has inherent power to require that supporting affidavits be filed.[21] But at least in the absence of a court order or local rule such affidavits are not necessary, and if filed by either the movant or the government they are no substitute for competent proof when factual issues are properly raised.[22] The question is whether the allegations in the moving papers, including affidavits if any are filed, are sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented. If the allegations are sufficient, and factual issues are raised, a hearing is required.[23]

Appellant's papers did not meet this standard. The allegations of appellant's motions are in the words of the statutes, without supporting detail. The affidavit of appellant's counsel alleges that one of appellant's letters was "presumably" opened, but the basis for counsel's conjecture is not stated. Counsel also fails to set out any factual detail supporting his conclusion that the Internal Revenue agents "must have been familiar" with the contents of correspondence and telephone conversations to which their questions to witnesses referred. Under the principle established by *Nardone,* and the cases which apply it (note 20), such general and speculative averments will not do.

As noted, the court advised appellant of the reason for the denial of his motion. Although five months elapsed before trial, appellant made no effort to supplement his allegations. At trial, the court indicated a willingness to reconsider the motion whenever any evidence should appear to justify it. Appellant's counsel questioned two of the government's bettor-witnesses in an effort to support his assertion that the questions asked of the witnesses by government agents during pretrial investigation had indicated knowledge of the contents of telephone calls and letters passing between the witnesses and appellant. The answers were negative. Appellant's counsel refrained from questioning other bettor-witnesses along this line, or from pursuing the inquiry when the government agent in charge of the investigation was on the stand.

Affirmed.

1964) ; United States v. Frankfeld, 100 F.Supp. 934, 936 (D.Md.1951) ; United States v. Vomero, 6 F.R.D. 275, 276 (E. D.N.Y.1946).

21. United States v. Privinzini, 6 F.R.D. 207 (S.D.N.Y.1946). See also W. D. Wash.Rule 9, Fischer & Willis, Fed.Local Ct. Rules 22 (1964).

22. United States v. Okawa, 26 F.R.D. 384, 386 (D.Haw.1961) ; United States v. Warrington, 17 F.R.D. 25 (N.D.Calif. 1955). Cf. Wright v. Dickson, 336 F.2d 878, 882 (9th Cir. 1964).

23. Cf. Austin v. United States, 297 F.2d 356, 360 (4th Cir. 1961) ; Hoffritz v. United States, 240 F.2d 109, 112 (9th Cir. 1956).