UNITED STATES

v.

Alfred E. S. O'NEILL.

Crim. No. 78–286.

United States District Court, E. D. Pennsylvania.

Jan. 18, 1979.

See also D.C., 463 F.Supp. 1205.

Edward S. G. Dennis, Jr., and Luther E. Weaver, III, Asst. U. S. Attys., Philadelphia, Pa., for the U. S.

Alan Turner, Public Defender, Philadelphia, Pa., for defendant.

## MEMORANDUM

POLLAK, District Judge.

### I.

Defendant Alfred E. S. O'Neill asserts that counts 4, 5, 7–9, 11, 12, 14, 15, 17–22, 24–26, and 29–50 of the indictment against him are duplicitous—that is, that each count charges two offenses.[1] He asks that the Government be required to elect which of the offenses in each count it will proceed on at trial, or, in the alternative, that these counts of the indictment be dismissed. Each of the assertedly duplicitous counts alleges either (1) O'Neill made two false statements to a federally insured bank in order to obtain a loan,[2] or (2) O'Neill made two false statements to a federally insured bank in order to obtain release of collateral.[3] Defendant contends that each false

1. The converse flaw is multiplicity—the charging of a single crime in several counts of an indictment.

2. A typical count reads:
 On or about April 15, 1974, in the Eastern District of Pennsylvania, ALFRED E. S. O'NEILL, defendant herein, did knowingly make a materially false statement, in relation to an application for a loan for the First American Corporation, submitted by the defendant on or about said date, to the American Bank and Trust Company of Pennsylvania, the deposits of the bank being then and there insured by the Federal Deposit Insurance Corporation, Certificate Number 11870–2, for the purpose of influencing the action of the bank to approve the loan on behalf of First American Corporation, the loan being identified by note number 0477812 in the amount of $14,820.00, in that defendant submitted to the bank, as security for the loan, Midland Mutual Life Insurance policy, number 471718 in the name of Jonathan F. Tannen, and represented to the bank:
 (a) That the insurance policy that was submitted to the bank as security for the loan would have a future cash surrender value as set forth in the appropriate schedules attached to those policies, whereas, the defendant then and there, in truth and fact, well knew that the policies would be worthless because no premiums would be paid on those policies to the Midland Mutual Life Insurance Company.

 (b) That the named insured, Jonathan F. Tannen, had signed documents purporting to assign their respective life insurance policies to the First American Corporation, whereas, the defendant then and in truth and fact, well knew that the named insured had not signed these documents of assignment.
 In violation of Title 18, United States Code, Section 1014.

3. A typical count reads:
 That on or about June 12, 1974, in the Eastern District of Pennsylvania, ALFRED E. S. O'NEILL, defendant herein, did knowingly make a materially false statement in relation to the release of security that was on deposit for a loan previously granted to the First American Corporation at the American Bank and Trust Company of Pennsylvania, a bank the deposits of which were then and there insured by the Federal Deposit Insurance Corporation, Certificate Number 11870–2, for the purpose of influencing the action of the bank to release the security for the loan, the loan being identified by note number 0426104, and the security being identified as Aetna Life Insurance policy number N2862444 in the name of Domenic Disco, Sr., in that defendant herein stated and represented:
 (a) That the insurance policy had a cash surrender value by virtue of the fact that the premium had been paid; and
 (b) That the defendant would take the insurance policy back to Aetna Life Insurance

statement alleged in each count constitutes a separate offense under 18 U.S.C. § 1014, and two of them cannot be alleged in a single count. The Government asserts that each application for a loan, or each attempt to obtain the release of collateral, constitutes a single transaction, and that the totality of false statements—whether one, two, or many—made in support of each separate application or attempt constitutes but a single offense. The Government contends further that if O'Neill made either of the false statements charged in each challenged count, he is guilty of the offense charged.

## II.

Duplicitous indictments must be guarded against because of their potential for prejudice to a defendant:

> One vice of duplicity is that a general verdict for a defendant on that count does not reveal whether the jury found him not guilty of one crime or not guilty of both. Conceivably this could prejudice the defendant in protecting himself against double jeopardy. Another vice of duplicity is that a general verdict of guilty does not disclose whether the jury found the defendant guilty of one crime or of both. Conceivably, this could prejudice the defendant in sentencing and in obtaining appellate review. A third vice

of duplicity is that it may prejudice the defendant with respect to evidentiary rulings during the trial, since evidence admissible on one offense might be inadmissible on the other. . . . Finally, there is no way of knowing with a general verdict on two separate offenses joined in a single count whether the jury was unanimous with respect to either.

*United States v. Starks*, 515 F.2d 112, 116–17 (3d Cir. 1975). The traditional remedy for duplicity is a requirement that the Government elect which of the charges in the indictment it will proceed upon. *Id.* 117.

I conclude that the counts contained in this indictment are not duplicitous. Unless care is taken, however, certain of the evils of duplicity might attend a trial upon this indictment. While I will not order the Government to elect which falsehood it will pursue in each count or suffer dismissal of the counts, I will order partial relief, designed to meet the particular problems raised by this indictment.

## III.

 The fact that many counts of this indictment allege two false statements as the basis for a single charge under 18 U.S.C. § 1014 [4] does not require a conclusion

---

Company obtain the money owed to the bank from the cash surrender value of the insurance policy and pay the money to the bank, in order to repay the loan on behalf of *First American Corporation*;

Which statement and representation the defendant then and there, in truth and fact, well knew was false and fraudulent.

In violation of Title 18, United States Code, Section 1014.

4. 18 U.S.C. § 1014 provides as follows:

Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of the Reconstruction Finance Corporation, Farm Credit Administration, Federal Crop Insurance Corporation, Farmers' Home Corporation, the Secretary of Agriculture acting through the Farmers' Home Administration, any Federal intermediate credit bank, or any division, officer, or employee thereof, or of *any corporation organized under sections*

1131–1134m of Title 12, or of any regional agricultural credit corporation established pursuant to law, or of the National Agricultural Credit Corporation, a Federal Home Loan Bank, the Federal Home Loan Bank Board, the Home Owners' Loan Corporation, a Federal Savings and Loan Association, a Federal land bank, a joint-stock land bank, a Federal land bank association, a Federal Reserve bank, a small business investment company, a Federal credit union, an insured State-chartered credit union, any institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation, any bank the deposits of which are insured by the Federal Deposit Insurance Corporation, any member of the Federal Home Loan Bank System, the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation, or the Administrator of the National Credit Union Administration, upon any application, advance, discount, purchase, purchase agreement, re-

that the counts are duplicitous. "We know of no rule that renders an indictment duplicitous because it charges as one joint offense a single completed transaction instead of charging in separate counts as many offenses as the evidence at the trial might conceivably sustain." *Korholz v. United States*, 269 F.2d 897, 901 (10th Cir. 1959), *cert. denied*, 361 U.S. 929, 80 S.Ct. 367, 4 L.Ed.2d 352 (1960), quoting *Mellor v. United States*, 160 F.2d 757, 762 (8th Cir.) *cert. denied*, 331 U.S. 848, 67 S.Ct. 1734, 91 L.Ed. 1858 (1947). The complexities of modern economic life often make it difficult to determine what ought to be one functional unit for the purposes of prosecution. As a result, the Government must have, within certain limits, discretion to charge an entire criminal episode in a single count, *United States v. Tanner*, 471 F.2d 128, 138 (7th Cir.), *cert. denied*, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972), and, indeed, the Ninth Circuit has commended the Government for doing so where multiple punishment of defendants would clearly be inappropriate. *Cohen v. United States*, 378 F.2d 751, 754 (9th Cir.), *cert. denied*, 381 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967).

It is true that Section 1014 prohibits the utterance of "*any* false statement or report" (emphasis added) to influence the action of a federally insured bank, and thus two false statements or reports can be seen as two offenses. *Bins v. United States*, 331 F.2d 390 (5th Cir. 1964), *cert. denied*, 379 U.S. 880, 85 S.Ct. 149, 13 L.Ed.2d 87 (1964) (two false forms submitted to influence action on a single loan constitute two offenses). It is often difficult to determine, however, where one false statement leaves off and another picks up, or when the two false statements are so closely related that they form one functional unit. In many of these counts, O'Neill is charged with representing to a bank that a certain insurance

policy would have a future cash surrender value and that the policy had been assigned to him, both of which representations are said to be knowing falsehoods. Yet it is quite clear that, functionally speaking, these are not separable falsehoods. The bank would not have given any loan in reliance upon these policies unless it believed both of the statements were true; if either is false, the policy is worthless as collateral.[5] The difficulty of determining whether one representation or two has been made is underscored by defendant's own handling of this motion. In count 15, among others, the indictment alleges that the defendant asserted, in connection with the attempt to get a single loan, that two insurance policies would have a future cash surrender value and that they had both been assigned to him. He attacks the count as duplicitous because it alleges a false statement concerning future cash surrender value and a false statement concerning assignment of the policies. He does not assert, however, that the count alleges *four* falsities, as he might have: defendant might have argued that the representation that the two policies would have a cash surrender value is two statements; similarly concerning their assignment.

Given the difficulty of conceptualizing the proper transactional unit solely in terms of single or multiple statements, it may prove helpful to look at the evil which the statute seeks to prevent. The statute seeks to prevent losses to federally insured banks resulting from fraudulent transactions. See *Kay v. United States*, 303 U.S. 1, 6, 58 S.Ct. 468, 471, 82 L.Ed. 607 (1938). Each pair of misrepresentations charged in a single count was aimed at a single allegedly fraudulent transaction; and it is the attempt to induce a fraudulent transaction, and the losses to federally insured banks resulting therefrom, rather than simply the

purchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined not more

than $5,000 or imprisoned not more than two years, or both.

5. This is not to suggest that either statement alone is not material.

falsehoods, which Congress was seeking to prevent.[6]

This is the analysis followed in most of the analogous cases. In *Cohen v. United States, supra,* the defendant was charged in a single count of use of a wire communication facility to place a single interstate bet, 18 U.S.C. § 1084(a), although several telephone calls had been made. The Government was commended for "treating all such calls for the same purpose during a brief period as one crime subject to a single statutory penalty. 378 F.2d at 754; *accord, United States v. Kelley,* 395 F.2d 727 (2d Cir.), *cert. denied,* 393 U.S. 963, 89 S.Ct. 391, 21 L.Ed.2d 376 (1968). In *Cohen* and *Kelley,* the argument for finding the indictment duplicitous was stronger than it is here, because each phone call is an easily identifiable unit, *cf. Bins v. United States, supra* note 6, whereas here, O'Neill's alleged falsehoods are not as readily separable. In *Korholz v. United States, supra,* an employer and one of its officers were alleged in a single count to have bribed a union officer in violation of the Taft-Hartley Act's prohibition of payments by employers to union officials. The Court held the charge not duplicitous, despite the fact that thirteen separate payments were involved, because all the payments were part of a single scheme with a single object: influence over a single N.L.R.B. election. This is similar to the situation in which O'Neill finds himself: he is charged with making two false statements in order to influence action on a single loan. Again, the payments in *Korholz* are more readily separable into distinct units than the misrepresentations of which O'Neill is accused.

And in *United States v. Browning, Inc.,* 572 F.2d 720 (10th Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 88, 58 L.Ed.2d 114 (1978), the District Court had dismissed as duplicitous a count alleging that the defendants had avoided customs duty on twenty-six guns by falsifying documents concerning their value. The Court of Appeals reversed, stating that "The trial court was concerned about the fact that the prosecutors stated in open court that the treating of this as one transaction rather than twenty-six was in the defendants' best interest. This does not call for a sanction against the government." *Id.* at 726. The Court reinstated the count and remanded to the District Court for trial. The Court recognized that the count presented problems of fairness to the defendant that would need to be remedied at trial, and left it to the trial court to devise such a remedy.

By contrast, in *United States v. Tanner, supra,* defendants were accused of making several illegal interstate shipments of explosives. The shipments were alleged to have been made by different defendants and to have gone to several different places at several different times. The Seventh Circuit held that the unity of purpose of the transactions—the shipment of weapons into Northern Ireland—did not permit the Government to place all the shipments in a single count. It distinguished *Cohen v. United States, supra,* on the same ground that the current case is distinguishable: in *Cohen* the several different calls were made within a brief period of time by a single defendant for the purpose of placing a single bet. Here, O'Neill is accused of making representations linked closely by both time and subject-matter.

The approach followed in the foregoing cases seems persuasive that this indictment should not be held duplicitous.

## IV.

A trial on this indictment, however, will present some of the same problems as a trial on a duplicitous indictment.

---

6. *Bins v. United States, supra,* held that submission of two false documents concerning a single bank loan constituted two offenses under a related statute, 18 U.S.C. § 1010. *Bins* was influenced in part by the inadequacy of the jury instruction given, 331 F.2d at 393, and in part by the ease of distinguishing between one document and another for purposes of drawing and proving a charge. Any broader intimation that more than one false representation may never be charged in a single fraud count goes well beyond what needed to be decided in *Bins.*

In particular, without proper instructions to the jury, it would be possible for some members of the jury to vote to convict on a count on the basis of a belief in the falsity of one of the representations charged and the other members of the jury to vote to convict on the basis of the other. I will therefore charge the jury that, in order to convict O'Neill on any count charging two or more misrepresentations, the jury must be unanimous as to at least one of the alleged misrepresentations before it can convict on the count. *United States v. Zeidman*, 540 F.2d 314, 317–18 (7th Cir. 1976). Further, in order to insure that, in the event of post-verdict motions or appeal, the sufficiency of the evidence as to any count on which O'Neill may be convicted can be tested in light of the misrepresentation which the jury found, I would be prepared to entertain a motion—if defendant is so minded—to submit to the jury a verdict form which would allow the jury to indicate, as to any count, which misrepresentation or misrepresentations, if any, it unanimously finds O'Neill to have committed. See *United States v. O'Looney*, 544 F.2d 385 (9th Cir. 1976), *cert. denied*, 429 U.S. 1023, 97 S.Ct. 642, 50 L.Ed.2d 625 (1976).

In suggesting a verdict form which would focus the jury's attention on each alleged misrepresentation, I appreciate that I am proposing to depart, for the purposes of this case, from the familiar general verdict—"Guilty–Not Guilty"—regarded as the norm in federal criminal trials. *United States v. Spock*, 416 F.2d 165 (1st Cir. 1969). But the concerns addressed by the First Circuit in *Spock*, in stressing the importance of the general verdict, seem, on close examination, to be concerns protective of the criminal defendant's time-honored interest in invoking the jury's assessment of the entirety of his behavior. These concerns would not seem controlling, or even applicable, where, as here, it is suggested that the defendant may find it in his interest to narrow the jury's focus to each particular allegation,

and to invoke the Court's aid in guiding the jury's deliberations through use of a verdict form more specific than "Guilty–Not Guilty." [7]

---

[7] I will not pursue such a verdict form unless defendant so moves. If defendant does so move, it will of course be open to the Government to argue that use of such a form of verdict would not be appropriate in this case.