**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Albert John BLAIR, Jr., Defendant–**
**Appellant.**

No. 94–5003.

United States Court of Appeals,
Tenth Circuit.

May 1, 1995.

Charles M. McLoughlin, Asst. U.S. Atty. (Stephen C. Lewis, U.S. Atty. for N.D. of Okl., with him on the brief), Tulsa, OK, for plaintiff-appellee.

Vicki Mandell–King, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the briefs), Denver, CO, for defendant-appellant.

Before BALDOCK and BRORBY, Circuit Judges, and BROWN,* District Judge.

* The Honorable Wesley E. Brown, Senior United States District Judge, District of Kansas, sitting by designation.

BRORBY, Circuit Judge.

The defendant, Albert John Blair Jr., brings this appeal challenging the district court's acceptance of his guilty plea and calculation of sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

## BACKGROUND

The relevant facts are essentially undisputed. Mr. Blair accepted wagers on professional and college basketball games from residents of the Northern District of Oklahoma over the phone via a toll-free number he had established. At the time, Mr. Blair was residing in the Dominican Republic. As part of his gambling operation, Mr. Blair employed a number of people who answered the phones, who used his information and capital, who paid a percentage of the profits from their own customers to him, and whose losses he covered. Mary J. Meyer played an active role in the enterprise. She would take and collect bets and place and lay off bets with other bookmakers for Mr. Blair.

On February 10, 1993, the government filed a two count information against Mr. Blair. Count one charged him with knowingly using a wire communication facility for the transmission of bets or wagers, contrary to 18 U.S.C. § 1084. Count two charged Mr. Blair with knowingly and willfully conspiring to commit the offense of illegal gambling against the United States, contrary to both 18 U.S.C. § 1084 and § 1955. Mr. Blair entered a plea agreement with the United States. On February 11, 1993, Mr. Blair appeared before the district court for the purpose of entering his guilty pleas. In addition to discussing the plea agreement and advising Mr. Blair of his rights, the court inquired as to the factual basis for the plea. Satisfied that there was a factual basis for the pleas, the district court accepted the plea agreement.

A presentence investigation report was prepared, and Mr. Blair filed several objections to it. Of those objections, only one is relevant to this appeal: Mr. Blair should not be assessed a two point increase in his base offense level for obstruction of justice. The factual basis for this increase, which the dis-

trict court accepted, was Mr. Blair's "sham" marriage to Mary Meyer, intended to enable Ms. Meyer to invoke the marital privilege and thereby avoid testifying against Mr. Blair before the grand jury.

Mr. Blair brings this appeal arguing the district court erred (1) in accepting his guilty pleas as no factual basis was established showing he was guilty of the crimes charged, and (2) in imposing a two point enhancement for obstruction of justice.

## DISCUSSION

### I.

Mr. Blair argues the district court committed reversible error in accepting his guilty plea. This argument is premised on the contention that 18 U.S.C. § 1084 and § 371 are "specific intent" crimes and, further, that a specific intent crime requires a showing the defendant was cognizant of the illegality of his actions. In short, Mr. Blair argues ignorance of the law *is* a defense to specific intent crimes generally and to the crimes he plead guilty to specifically. We are not persuaded.

### A

Section 1084 provides, in pertinent part:

(a) Whoever being engaged in the business of betting or wagering *knowingly* uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers ... which entitles the recipient to receive money or credit as a result of bets or wagers ... shall be fined not more than $10,000 or imprisoned not more than two years, or both.

18 U.S.C. § 1084 (emphasis added).

■ The term "knowledge" as used in the criminal law has long had a very distinct and definite meaning. It specifies that the *mens rea* needed to establish the crime be that of general intent. *E.g., United States v. Bailey,* 444 U.S. 394, 405, 100 S.Ct. 624, 632, 62 L.Ed.2d 575 (1980) (the term knowledge corresponds with the concept of general intent); *United States v. Hall,* 805 F.2d 1410, 1420 (10th Cir.1986) (same); Edward J. Devitt et al., *Federal Jury Practice and Instructions*

§ 17.04 (4th ed. 1992). Because § 1084 proscribes the knowing use of wire communication facilities to take bets, the plain language of the statute clearly evinces Congress's judgment that general intent is the *mens rea* needed to establish a violation of § 1084.

■ In arguing to the contrary, Mr. Blair relies exclusively on *Cohen v. United States*, 378 F.2d 751, 756–57 (9th Cir.), *cert. denied*, 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967). While the court in *Cohen* did not conclude that § 1084 was a specific intent crime, the court did hold that "Congress intended knowledge of the statutory prohibition to be an element of the offense under section 1084(a)." *Id.* at 757. We do not find the analysis of *Cohen* compelling and thus, decline to adopt it.

First, the *Cohen* case contains no discussion of the plain meaning of § 1084 or the clearly established import of the term "knowledge." The language of the statute is, in our judgment, dispositive on the question of the *mens rea* needed to establish the crime. Second, we disagree with the *Cohen* court's conclusion Congress intended the statute to require knowledge of the statutory prohibition to support a conviction for its violation. The court reached this conclusion simply by observing that wagering is legal in the state of Nevada and thus, were the court to read the statute as requiring knowledge of its prohibition, "those innocent of intentional wrongdoing are afforded a defense." *Id.* at 756. While this undoubtedly is true, Congress nowhere manifested its intent to provide such a defense. Our duty is to apply the law as written, not rewrite it as we see fit. We decline to adopt the rule laid out in *Cohen*, and hold that the *mens rea* required to establish a violation of § 1084 is that of general intent. Accordingly, we reject Mr. Blair's allegation that reversible error was committed in accepting his plea to count one because no factual basis existed to establish he acted with specific intent.

**B**

Mr. Blair argues there was no factual basis to support his guilty plea with respect to the conspiracy charged in count two. Again, he asserts conspiracy is a specific intent crime

that requires proof the defendant acted with knowledge his conduct was prohibited by law.

■ A specific intent crime is one in which an "act was committed voluntarily and purposely with the specific intent to do something the law forbids." *Hall*, 805 F.2d at 1420, *see also Apodaca v. United States*, 188 F.2d 932, 937 (10th Cir.1951) (specific intent requires "a conscious purpose to do wrong ... not only [with] knowledge of the thing done, but a determination to do it with bad intent or with an evil purpose or motive"). In contrast, a general intent crime is one in which an "act was done voluntarily and intentionally, and not because of mistake or accident." *Hall*, 805 F.2d at 1420; *accord Bailey*, 444 U.S. at 404, 100 S.Ct. at 631 (discussing the Model Penal Code's distinction between acting "purposely" as opposed to "knowingly" and noting the two concepts correspond loosely to the common law concepts of general and specific intent). In short, a specific intent crime is one in which the defendant acts not only with knowledge of what he is doing, but does so with the objective of completing some unlawful act.

■ There can be no doubt, therefore, that conspiracy is a specific intent crime. The general federal conspiracy statute provides, "[i]f two or more persons conspire ... to commit any offense against the United States ... each shall be fined not more than $10,000 or imprisoned not more than five years, or both." 18 U.S.C. § 371. "[T]he specific intent required for the crime of conspiracy is in fact the intent to advance or further the unlawful object of the conspiracy." *United States v. Haldeman*, 559 F.2d 31, 112 (D.C.Cir.1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *see also, United States v. Feola*, 420 U.S. 671, 688, 95 S.Ct. 1255, 1265, 43 L.Ed.2d 541 (1975) (§ 371 requires "the conspirators agree to participate in the prohibited conduct") (citing *Anderson v. United States*, 417 U.S. 211, 226, 94 S.Ct. 2253, 2263, 41 L.Ed.2d 20 (1974)); *United States v. Nall*, 949 F.2d 301, 305 (10th Cir.1991) (elements of the crime of conspiracy include "an agreement[,] the purpose of [which] must be to break the law").

While we agree with Mr. Blair that the crime of conspiracy outlawed by § 371 is a specific intent crime, we do not accept the significance he and the government place on this fact. Specific intent crimes do not, as a rule, necessitate a showing the defendant intentionally violated a known legal duty. While it is true that such a requirement has been imposed in the context of income tax crimes and violations of the Bank Secrecy Act, *see, e.g., Cheek v. United States,* 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) (applying the Internal Revenue Code); *Ratzlaf v. United States,* —— U.S. ——, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (applying the Bank Secrecy Act), such a requirement has been imposed only in those circumstances where there was a clear directive from Congress. *E.g., United States v. Pomponio,* 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976) *(per curiam); Ratzlaf,* —— U.S. at ——, 114 S.Ct. at ——, 126 L.Ed.2d at 622–23. Absent such an intent, the general rule, "deeply rooted in the American legal system," is "that ignorance of the law or a mistake of law is no defense to criminal prosecution [and is one that] has been applied by the [United States Supreme] Court in numerous cases construing criminal statutes." *Cheek,* 498 U.S. at 199, 111 S.Ct. at 609 (citations omitted). Thus, a specific intent crime "normally does not necessitate proof that the defendant was specifically aware of the law penalizing his conduct." *United States v. Scanio,* 900 F.2d 485, 489 (2d Cir.1990); *accord United States v. Shirk,* 981 F.2d 1382, 1390 (3d Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 873, 127 L.Ed.2d 70 (1994).

The question of whether § 371 evinces the intent of Congress to require a defendant to have intentionally violated a known legal duty in order to sustain a conviction has been squarely rejected by the Supreme Court:

> The general conspiracy statute, 18 U.S.C. § 371, offers no textual support for the proposition that to be guilty of conspiracy a defendant in effect must have known that his conduct violated federal law. The statute makes it unlawful simply to "conspire ... to commit any offense against the United States." A natural reading of these words would be that since one can violate a criminal statute simply by engaging in the forbidden conduct, a conspiracy to commit that offense is nothing more than an agreement to engage in the prohibited conduct.

*Feola,* 420 U.S. at 687, 95 S.Ct. at 1265 (footnote omitted). Mr. Blair has made no effort to distinguish *Feola* from the present case and, indeed, nowhere mentions it in his brief. Accordingly, we hold that *Feola* is controlling and the prosecution need not prove a defendant intentionally violates a known legal duty in order to sustain a conviction under § 371 in cases where the underlying substantive offense does not impose such a requirement.

We turn next to the question whether a sufficient factual basis existed to permit the district court to accept Mr. Blair's guilty plea as to count two given that § 371 is a specific intent crime.

Fed.R.Crim.P. 11(f) requires a court to satisfy itself that there is a factual basis for a guilty plea before entering judgment on such a plea. "The acceptance of a guilty plea is deemed a factual finding that there is an adequate factual basis for the plea [and] review [is] under the clearly erroneous standard." *United States v. Adams,* 961 F.2d 505, 509 (5th Cir.1992) (citations omitted). *Cf. United States v. Keiswetter,* 860 F.2d 992, 996 (10th Cir.1988) ("Although Rule 11(f) establishes a subjective standard, the trial judge's exercise of ... discretion can only be judged by reference to the record"), *rev'd en banc on other grounds,* 866 F.2d 1301 (10th Cir.1989).

Mr. Blair's petition to enter a plea of guilty as to count two stated:

> From approximately October 1990 through May 1991 I agreed with Richard Lowe to assist him and others in accepting wagers from individuals who resided in the Northern District of Oklahoma and elsewhere on sporting events. I also prepared the "line" for use in the operation. At one time we had six people including myself taking bets and placing bets. The volume per day was over $2,000.

At the hearing held to enter his guilty pleas, the district court inquired as follows:

THE COURT: Count Two states: "From on or about January 28, 1991, and continuing thereafter until on or about March 23, 1991, in the Northern District of Oklahoma and elsewhere, the defendant knowingly and willfully conspired and agreed together with other persons to commit offenses against the United States, to wit:

"1. being in the business of betting and wagering, to knowingly use a wire communication facility, that is, a telephone, for the transmission in foreign commerce, of bets and wagers....

. . . .

"It was a part of the conspiracy that the defendant and his five or more co-conspirators would operate an illegal gambling/bookmaking operation ... from the Dominican Republic.

. . . .

Did you follow the reading, sir, of the information?

[MR. BLAIR]: I did, Your Honor.

THE COURT: Do you have any questions about it at all?

[MR. BLAIR]: None whatsoever.

THE COURT: Have you had ample time to talk to your lawyer, Mr. Carnes, about it?

[MR. BLAIR]: Much time, sir.

. . . .

THE COURT: More particularly, on or about the date of February 2, 1991, or from January 28, 1991, continuing thereafter until about March 23rd, 1991, throughout that entire period of time, sir, were you mentally alert and did you know what you were doing?

[MR. BLAIR]: I did, Your Honor.

In our judgment, this colloquy clearly establishes a factual basis for Mr. Blair's guilty plea. The district court expressly inquired as to whether Mr. Blair knowingly and willfully entered into a conspiracy to establish a bookmaking operation in the Dominican Republic. Mr. Blair agreed that he had. Mr. Blair further stated he knew what he was

doing at all times relevant to count two. Finally, he stated he had no questions or uncertainties regarding the charge against him, and he informed the court he had ample time to discuss the charges with his attorney.

Ignoring all of this, Mr. Blair focuses exclusively on his response to the district court's inquiry as to whether he knew his conduct was illegal. He stated: "I didn't really look into it. I wish I had." Because knowledge that one's conduct is illegal is not necessary to establish the crime that Mr. Blair pled guilty to, this statement casts no doubt on the factual basis for his plea. Based on the relevant statements and information before the district court, we conclude it was not clearly erroneous to accept Mr. Blair's guilty plea with respect to count two.

## II.

■ Mr. Blair next argues the district court erred in imposing a two point sentence enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. The enhancement was premised on the court's finding, which has not been challenged, that Mr. Blair's marriage to Mary Meyer was a "sham" intended to permit her to invoke the marital privilege and thereby avoid testifying against Mr. Blair before the grand jury. Mr. Blair's allegation of error is premised on the contention § 3C1.1 has no application under these facts. When application of the guidelines to the facts involves contested issues of law, our review is de novo. United States v. Rutter, 897 F.2d 1558, 1560 (10th Cir.), cert. denied, 498 U.S. 829, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990).

■ Section 3C1.1 provides, "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." Following Mr. Blair's sentencing, however, the commentary to this section was amended to include Application Note 7: "Under this section, the defendant is accountable for his own conduct and for conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused." While the

guidelines in effect at the time of sentencing apply, *United States v. Underwood,* 938 F.2d 1086, 1090 (10th Cir.1991), there is no constitutional or other bar to the retroactive application of a mere clarification of the guidelines. *United States v. Saucedo,* 950 F.2d 1508, 1514 (10th Cir.1991).

At the time of Mr. Blair's sentencing, § 3C1.1 encompassed "[o]bstructive conduct ... vary[ing] widely in nature, degree of planning, and seriousness." U.S.S.G. § 3C1.1, comment. (n. 2). The addition of Note 7 was intended only to "clarif[y] the scope of the conduct for which the defendant is accountable under §§ 3C1.1 and 3C1.2." U.S.S.G. Appendix C, Amendment 457. While not conclusive, the Sentencing Commission's characterization of an amendment to the guidelines as a clarification, rather than a substantive change, is entitled to deference. *United States v. Frederick,* 897 F.2d 490, 494 (10th Cir.), *cert. denied,* 498 U.S. 863, 111 S.Ct. 171, 112 L.Ed.2d 135 (1990). We agree with the Commission that Application Note 7 is nothing more than a clarification of § 3C1.1 as it existed at the time of Mr. Blair's sentencing. Section 3C1.1 encompasses conduct intended to "impede the administration of justice." In our judgment, stating a defendant can be held accountable for conduct he aided, abetted, counseled, commanded, induced, procured or caused does nothing more than clarifies what it means to "impede." As such, Application Note 7 is relevant in determining whether the district court erred in enhancing Mr. Blair's sentence for obstruction of justice.

Mary Meyer had decided on her own not to testify against Mr. Blair after she was indicted. However, Mr. Blair consulted an attorney to learn of the nature and operation of the marital privilege following Ms. Meyer's grand jury subpoena. He informed her that if they were married, her desire not to testify against him could be accomplished. In short, Mr. Blair was attempting to cloak Ms. Meyer's otherwise unlawful refusal to testify against him before the grand jury in legitimacy. There is no question that such a scheme amounts to aiding and abetting the obstruction of justice for purposes of § 3C1.1. Accordingly, we conclude the district court did not err in enhancing Mr. Blair's sentence for obstruction of justice.

The judgment of the district court is, therefore, **AFFIRMED.**