UNITED STATES of America, Plaintiff,

v.

David JACKSON, Defendant.

No. Crim.A. 98–CR–10–B.

United States District Court,
D. Colorado.

June 15, 1998.

James Allison, Assistant U.S. Attorney, Denver, CO, for Plaintiff.

Warren R. Williamson, Assistant Federal Public Defender, Denver, CO, for Defendant.

**MEMORANDUM OPINION AND ORDER**

BABCOCK, District Judge.

The superseding indictment, filed May 20, 1998, charges defendant, David L. Jackson (Jackson), with seven counts of kidnapping in violation of 18 U.S.C. § 1201(a)(5). The superseding indictment alleges that Jackson kidnapped seven United States Postal Service employees on December 24, 1997. Pursuant to Fed.R.Crim.P. 12.2(a), Jackson filed a notice of his intention to rely upon the defense of diminished mental capacity. Jackson now moves *in limine* for a determination whether evidence of his diminished mental capacity is admissible at trial. A hearing was held on June 11, 1998. Based on the argument presented at the hearing, the briefs submitted by the parties, and for the reasons set forth below, I hold that evidence of Jackson's diminished mental capacity is inadmissible.

### I. THE DIMINISHED MENTAL CAPACITY DEFENSE

■ The defense of diminished mental capacity survived the enactment of the Insanity Defense Reform Act of 1984, 18 U.S.C. § 17 (1994 & 1997 Supp.). *United States v. Pohlot*, 827 F.2d 889, 906 (3d Cir.1987). Evidence of diminished mental capacity is admissible under two conditions. First, such evidence may negate the *mens rea* of a "specific intent" crime, but not the *mens rea* of a "general intent" crime. *United States v. Gonyea*, 140 F.3d 649, 650 (6th Cir.1998); *United States v. Reed*, 991 F.2d 399, 400 (7th Cir.1993); *United States v. Twine*, 853 F.2d 676, 679 (9th Cir.1988); *Pohlot*, 827 F.2d at 906. Second, expert testimony is limited to a diagnosis, the facts upon which the diagnosis is based, and the characteristics of any mental disease or defect from which a defendant suffered during the relevant time period. Experts may not opine directly or indirectly, however, on the ultimate issue of "specific intent." *United States v. Akers*, 945 F.Supp. 1442, 1445–1446 (D.Colo.1996) (citations omitted).

### II. "GENERAL INTENT" AND "SPECIFIC INTENT"

■ The Tenth Circuit recognizes the distinction between "general intent" and "specific intent" crimes. *See, e.g., United States v. Hatatley*, 130 F.3d 1399, 1404–1405 (10th Cir.1997); *United States v. Winchell*, 129 F.3d 1093, 1095–1096 (10th Cir.1997); *United States v. Blair*, 54 F.3d 639, 641 (10th Cir.1995). A "general intent" crime requires only that the defendant intend to do the act that the law proscribes. *Blair*, 54 F.3d at 641; *Gonyea*, 140 F.3d at 653 (citations omitted). In contrast, a "specific intent" crime is one that requires a defendant to do more than knowingly act in violation of the law. To establish specific intent, the government must prove that the defendant acted with the purpose of violating the law. Performance of the physical act proscribed in the statute is not enough to sustain a conviction of a specific intent crime. *Blair*, 54 F.3d at 641; *Gonyea*, 140 F.3d at 653 (citations omitted). LaFave and Scott describe the distinction as follows:

> ... the most common usage of "specific intent" is to designate a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime. Common larceny, for example, requires the taking and carrying away of the property of another, and the defendant's mental state as to this act must be established, but in addition it must be shown that there was an "intent to steal" the property. Similarly, common law burglary requires a breaking and entry into the dwelling of another, but in addition to the mental state connected with these acts it must also be established that the defendant acted "with intent to commit a felony therein."

\*     \*     \*     \*     \*     \*

> Likewise, criminal attempts require proof of an intent to bring about the consequences set forth in the crime attempted, and this is so even though no such intent is required for the completed crime.

LaFave Scott, *supra*, at 202. *See also United States v. Bailey*, 444 U.S. 394, 405, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (discussing the "heightened culpability" necessary for conviction of certain classes of crimes).

■ In this case, Jackson is charged with kidnapping in violation of the Federal Kidnapping Act, 18 U.S.C. § 1201(a), which states:

(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when—

(1) the person is willfully transported in interstate or foreign commerce;

(2) any such act against the person is done within the special maritime and territorial jurisdiction of the United States;

(3) any such act against the person is done within the special aircraft jurisdiction of the United States . . . ;

(4) the person is a foreign official, an internationally protected person, or an official guest . . . ; or

(5) the person is among those officers and employees designated in section 1114 of this title and any such act against the person is done while the person is engaged in, or on account of, the performance of official duties;

shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

18 U.S.C. § 1201 (1997). Section § 1201(a) constitutes a single crime with five jurisdictional bases rather than five different crimes.

The superseding indictment charges Jackson with kidnapping seven United States Postal Service employees during the performance of their official duties, in violation of § 1201(a)(5). Parsing the elements § 1201(a)(5) literally, one derives the following elements: (1) unlawfully seizing, confining, inveigling, decoying, kidnapping, abducting, or carrying away; (2) holding for ransom or reward or otherwise; (3) an employee of the United States Postal Service; and (4) while the employee is engaged in, or on account of, the performance of official duties. The language of § 1201(a)(5) does not, however, explicitly state the applicable *mens rea*.

■ Jackson focuses on the second element of § 1201(a)(5), "for ransom or reward or otherwise." Jackson contends that the government must prove that he acted with the "purpose" of holding one for ransom, reward or otherwise. When assigning a *mens rea* to an element of a crime, courts must follow congressional intent. *Bailey*, 444 U.S. at 406, 100 S.Ct. 624. The language

of the statute is the starting place for the inquiry. *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Neither the language of § 1201(a)(5) nor its legislative history, however, indicate the *mens rea* required for conviction. *See, generally,* H.R.Rep. No. 94–1614 (1976), *reprinted in* 1976 U.S.C.C.A.N. 4480; S.Rep. No. 92–1105 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4316. "Nevertheless, silence on this point by itself does not necessarily suggest that Congress intended to dispense with a conventional *mens rea* element, which would require that the defendant know the facts that make his conduct illegal." *Staples v. United States*, 511 U.S. 600, 604–606, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994); *see also United States v. Balint*, 258 U.S. 250, 251, 42 S.Ct. 301, 66 L.Ed. 604 (1922) (stating that, traditionally, "scienter" was a necessary element in every crime).

In *United States v. Walker*, 137 F.3d 1217, 1219 (10th Cir.1998), the defendant challenged the Federal Kidnapping Act as unconstitutionally vague. The defendant argued that the "or otherwise" portion of § 1201(a) did not provide him with fair notice that the conduct he contemplated was forbidden by law. The Tenth Circuit rejected this constitutional challenge and, in doing so, discussed the intent of Congress:

Prior to 1934, the Federal Kidnaping Act was applicable only if the captive was held for ransom or reward. *See United States v. Healy*, 376 U.S. 75, 81, 84 S.Ct. 553, 557, 11 L.Ed.2d 527 (1964). Congress amended the wording of the Act in 1934 to encompass persons held "for ransom or reward or otherwise." *Id.* In *Gooch v. United States*, 297 U.S. 124, 128, 56 S.Ct. 395, 397, 80 L.Ed. 522 (1936), the Supreme Court interpreted the "or otherwise" amendment to encompass any benefit which a captor might attempt to receive for himself. Subsequently, in *Healy*, the Court held *the Act is not limited to kidnapings for an ultimately illegal purpose.* 376 U.S. at 82, 84 S.Ct. at 557 ("we find no compelling correlation between the propriety of the ultimate purpose sought to be furthered by a kidnaping and the undesirability of the act of kidnaping itself").

*Walker,* 137 F.3d at 1219 (emphasis added). Although the issue whether § 1201(a) constitutes a specific intent or general intent crime was not before the Tenth Circuit in *Walker,* the Court's holding is instructive. According to the Tenth Circuit, the "for ransom or reward or otherwise" language of § 1201(a) upon which Jackson relies does not require the United States to prove that Jackson acted with an illegal purpose. As stated by the Supreme Court in *Healy,* the propriety of the defendant's ultimate purpose is inconsequential to his guilt if the defendant acted with the general intent to kidnap the victim. Because the government need not prove that Jackson acted with the purpose of violating the law, kidnapping in violation of § 1201(a)(5) is a general intent crime. *Blair,* 54 F.3d at 641.

■ This conclusion is buttressed by other precedent. When a criminal statute does not expressly mention the *mens rea* required for conviction, the *mens rea* of "knowledge," knowledge of the facts constituting the offense, is ordinarily implied. *Staples,* 511 U.S. at 605, 114 S.Ct. 1793 (an offense silent as to *mens rea* usually requires the defendant to "know the facts that make his conduct illegal"); *accord United States v. Barber,* 594 F.2d 1242, 1244 (9th Cir.1979). The Supreme Court has stated that " 'knowledge' corresponds loosely with the concept of general intent." *Bailey,* 444 U.S. at 405, 100 S.Ct. 624 (citing LaFave & Scott, *supra,* at 201–202). *See also United States v. DeAndino,* 958 F.2d 146, 148 (6th Cir.), *cert. denied,* 505 U.S. 1206, 112 S.Ct. 2997, 120 L.Ed.2d 874 (1992) (applying the rule of construction that, if a criminal statute does not specify a "heightened mental element," such as specific intent, general intent is presumed to be the required element); *accord United States v. Lewis,* 780 F.2d 1140, 1143 (4th Cir.1986) (in the absence of an explicit statement that the crime requires specific intent, assault within the maritime and territorial jurisdiction of the United States requires only general intent); *United States v. Nelson,* 733 F.2d 364, 370–371 (5th Cir.1984) (courts should not presume that a statutory crime requires specific intent in the absence of language to that effect); *Barber,* 594 F.2d 1242, 1244 (same); *People v. Schuett,* 833 P.2d 44, 49 (Colo.1992) (same).

At least one other court has arrived at the same conclusion regarding § 1201(a). In *United States v. Sneezer,* 983 F.2d 920, 923 (9th Cir.1992), the Ninth Circuit held that kidnapping in violation of § 1201(a)(2) constitutes a general intent crime. The Ninth Circuit based its holding on the difference in language between § 1201(a)(1) and § 1201(a)(2) (quoted above):

> Although no Ninth Circuit case has so held, kidnapping under 18 U.S.C. § 1201(a)(2) appears to be a general intent crime. Subsection 1201(a)(1), which makes kidnapping a federal crime when the victim is transported in interstate commerce, includes the word "willfully." In contrast, the relevant subsection in this case, subsection (a)(2), which makes kidnapping a federal crime when committed "within the special maritime and territorial jurisdiction of the United States" contains no such language. Because there is no language in § 1201(a)(2) that requires specific intent, the prosecution need not prove that the defendant committed the kidnapping for any particular purpose.

*Sneezer,* 983 F.2d 920, 922. This difference in language also exists between § 1201(a)(1) and § 1201(a)(5). Subsection (a)(1) includes the word "willfully" while subsection (a)(5) does not. I question, however, the Ninth Circuit's rationale. While comparison between subsection (a)(1) and the other subsections may lead to the reasonable conclusion that the other subsections do not require specific intent, this comparison is determinative only of the final element of the crime. *Sneezer* does not address the other elements of the crime that derive from the language of § 1201(a) rather than one of its five subsections. Here, Jackson argues that the language of § 1201(a) requires a *mens rea* of specific intent.

Further, it is not agreed with unanimity that the term "willfully" constitutes specific intent. In *Barber,* 594 F.2d at 1244, the Ninth Circuit equated "willfully" with "knowledge of the facts constituting the offense." *Accord United States v. Johnson,* 14 F.3d 766, 768 (2d Cir.1994); LaFave & Scott, *supra,* at 201–202. It is even questionable, therefore, whether § 1201(a)(1) constitutes a

specific intent crime. Nonetheless, I believe that the Ninth Circuit arrived at the correct result in *Sneezer.* Binding Supreme Court and Tenth Circuit precedent, as well as established cannons of statutory construction, compel the conclusion that Congress intended §. 1201(a)(5) to require proof of general intent, not specific intent.

## IV. THE RULE OF LENITY

██ Jackson contends that I should apply the rule of lenity. The rule of lenity stands for the principle that if a criminal statute is subject to multiple meanings, the court should resolve any ambiguity in favor of the defendant to ensure fair public notice of what action is prohibited by criminal statutes. *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955); *see also Liparota,* 471 U.S. at 427, 105 S.Ct. 2084. In the absence of a second reasonable construction, however, the statute is not ambiguous and the rule of lenity does not apply.

██ The rule of lenity "is reserved for cases where, after seizing every thing from which aid can be derived, the Court is left with an ambiguous statute." *Staples,* 511 U.S. at 619 n. 17, 114 S.Ct. 1793 (internal quotations and citations omitted). The rule of lenity is inapplicable unless there is a "grievous ambiguity or uncertainty" in the statute. *Chapman v. United States,* 500 U.S. 453, 463, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). In *Staples,* the Supreme Court concluded:

> Here, the background rule of the common law favoring *mens rea* and the substantial body of precedent we have developed construing statutes that do not specify a mental element provide considerable interpretive tools from which we can "seize aid," and they do not leave us with the ultimate impression that [18 U.S.C.] § 5861(d) is "grievously" ambiguous. Certainly, we have not concluded in the past that statutes silent with respect to *mens rea* are ambiguous. See, e.g., *United States v. Balint,* 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922).

*Staples,* 511 U.S. at 619 n. 17, 114 S.Ct. 1793; *accord United States v. Baird,* 29 F.3d 647, 651 (D.C.Cir.1994); *United States v. Morison,* 844 F.2d 1057, 1064 (4th Cir.1988).

Following *Staples,* I conclude that the rule of lenity is inapplicable here. Section 1201(a)(5) is not "grievously ambiguous." Deriving aid from binding precedent and established rules of statutory construction, I hold that § 1201(a)(5) is a general intent crime. No basis exists in either the statutory language or the legislative history for a second reasonable construction. Because reasonable multiple meanings do not exist, there is nothing to resolve in Jackson's favor. I decline, therefore, to apply the rule of lenity.

Accordingly, I ORDER that evidence regarding Jackson's diminished mental capacity is inadmissible to negate the *mens rea* element of 18 U.S.C. § 1201(a)(5), which is a general intent crime.