FILED
United States Court of Appeals
Tenth Circuit

June 12, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOSHUA J. HALL,

Defendant - Appellant.

No. 07-1213

(D. Colorado)

(D.C. No. 05-cr-425-REB)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, Chief Judge, **BALDOCK**, and **BRISCOE**, Circuit Judges.

---

On December 14, 2006, a jury in the United States District Court for the

District of Colorado convicted Joshua J. Hall of three offenses: retaliation against

a witness, *see* 18 U.S.C. § 1513(b)(2); conspiracy to retaliate against a witness,

*see id.* §§ 371, 1513(e); and possessing and brandishing a firearm in furtherance

of a crime of violence, *see id.* § 924(c)(1)(A). The district court sentenced him to

192 months' imprisonment. He appeals, challenging only the district court's

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* FED. R. APP. P. 34(f); 10TH CIR. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with FED. R. APP. P. 32.1 and 10TH CIR. R. 32.1.

*mens rea* instructions to the jury. Taking jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

### A. Facts

The witness against whom Mr. Hall retaliated was Clifford Cline. Mr. Cline became a witness after law-enforcement officials found a shotgun in a car that he owned after it had been impounded because of its involvement in a crime. Mr. Cline had loaned the car to Mr. Hall, who in turn had loaned it to his brother Michael. An agent of the Bureau of Alcohol, Tobacco, and Firearms (ATF) called Mr. Cline to ask him to come to the ATF office for an interview about the shotgun. Before the interview Mr. Cline and Mr. Hall fabricated an explanation for the gun that would omit any mention of Mr. Hall, for whom there existed outstanding arrest warrants, and keep Mr. Hall out of trouble. After the interview, Mr. Cline assured Mr. Hall that he had stuck to their story.

Nevertheless, Mr. Hall became suspicious of Mr. Cline. In September 2004, he asked Marissa Yingling-Windbush to call Mr. Cline and invite him to a hotel room where she and Mr. Hall had been drinking alcohol and smoking methamphetamine. Mr. Cline agreed to come. When he arrived, she opened the door while Mr. Hall hid in the bathroom. After Mr. Cline entered the room, she locked the door behind him and Mr. Hall emerged with a gun. He questioned Mr. Cline about his involvement with the ATF. Although Mr. Cline denied any

-2-

involvement, Mr. Hall hit him with his fists and the gun. Then the three got high to relax. Mr. Hall later made a phone call and three men arrived at the hotel room. After a short discussion Mr. Hall and one of the three new arrivals, Aaron Bowen, began to beat Mr. Cline. Apparently because of the noise he was making, they moved Mr. Cline to a trailer house to continue the questioning and beating. They warned Mr. Cline that he and his children would be harmed if he went to the authorities. Mr. Cline managed to drive away and get help, but spent three days in a hospital as a result of his injuries.

**B.     Court Proceedings**

A federal grand jury charged Mr. Hall, Ms. Yingling-Windbush, and Mr. Bowen with retaliation and conspiracy to retaliate against Mr. Cline for providing information to ATF agents. It also charged them with possessing and brandishing a firearm in furtherance of the crime. At trial, Mr. Hall appears to have denied possessing the pistol. He also defended all the charges on the theory that he was too impaired by alcohol and drugs to have the requisite intent. In support of this theory, he called an expert witness to testify about the effects of methamphetamine, marijuana, and alcohol on his mental capacity.

The district court's instructions on the elements of each of the three charged crimes stated what *mens rea* had to be proved. The court also gave an instruction on voluntary intoxication. Two of the court's instructions are the

focus of this appeal. One is the following instruction on the elements of conspiracy:

> Defendant is charged in Count Two of the Indictment with violation of Title 18, United States Code, Section 371. This law makes it a crime to conspire to commit an offense against the United States, specifically, in this instance, conspiring to retaliate against a witness. To find defendant guilty of this crime, you must be convinced that the government has proved each and all of the following five (5) essential elements beyond a reasonable doubt:
> *First*: that defendant agreed with at least one other person to violate the law; and
> *Second*: that one of the conspirators engaged in at least one overt act furthering the conspiracy's objective; and
> *Third*: that defendant knew the essential objective of the conspiracy; and
> *Fourth*: that defendant knowingly and voluntarily participated; and
> *Fifth*: that there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

Rec. vol. II, doc. 311, at 18. (The quoted language is identical in all relevant respects to Tenth Circuit Pattern Criminal Jury Instruction § 2.19 (2006)). Mr. Hall submitted a proposed instruction that differed from the above instruction only by adding a sixth element, which he asked that the court insert between the fourth and fifth elements of the given instruction. Mr. Hall's proposed element provided: "the defendant intended to further or advance the object of the conspiracy." *Id.* vol. VII, at 457. The court rejected Mr. Hall's proposed instruction and overruled his objection.

The second instruction relevant to this appeal is the one that defined "knowingly":

> The term "knowingly," used in these instructions to describe the alleged state of mind of defendant, means that he was conscious and aware of his action, realized what he was doing or what was happening around him, and did not act because of ignorance, mistake, or accident.

*Id*. vol. II, doc. 311, at 23 (This language is identical in all relevant respects to model instruction § 17.04 in 1A Kevin F. O'Malley, et al., Federal Jury Practice and Instructions (5th ed. 2008)).  Mr. Hall objected to the instruction, apparently because it omitted the word "intentionally."  He submitted as an alternative a Tenth Circuit pattern jury instruction, which states:

> When the word "knowingly" is used in these instructions, it means that the act was done voluntarily and intentionally, and not because of mistake or accident.  Although knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact. Knowledge can be inferred if the defendant was aware of a high probability of the existence of [the fact in question], unless the defendant did not actually believe [the fact in question].

Rec. vol. II, doc. 293, Attach. 3 (quoting Tenth Circuit Pattern Criminal Jury Instruction § 1.37 (2006)).  The district court rejected the alternative instruction.

Also pertinent on appeal is Mr. Hall's proffered instruction on "specific intent," which stated:

> The crimes of retaliation against a witness, aid and abet, and conspiracy, are specific intent crimes.  A specific intent crime is one in which the defendant knows that he is committing certain unlawful acts and, in addition, commits the acts intending to achieve an unlawful

-5-

purpose. Specific intent is more than a mere intention to perform an act. The defendant must also intend that further consequences result from the act. Before you can find the defendant guilty of any of these crimes, the Government must prove beyond a reasonable doubt that the defendant acted with the specific intent described above.

Rec. vol. II, doc. 293, Attach. 4. He argued that without the instruction, considering the court's instructions in their entirety, the government would effectively be relieved of its duty to prove, and the jury of its duty to find, that he had acted with the *mens rea* required to be convicted of the crimes. The court disagreed.

## II. DISCUSSION

"We review the district court's decision to give a particular jury instruction for abuse of discretion. The instructions given are reviewed de novo to determine whether, in their entirety, they correctly state the governing law." *Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 606 (10th Cir. 1997) (citations omitted). "We reverse only if we have a substantial doubt the jury instructions properly guided the jury in its deliberations *and* we find prejudice." *United States v. Haslip*, 160 F.3d 649, 654 (10th Cir. 1998) (emphasis in original).

Mr. Hall first argues that the conspiracy instruction inadequately instructed the jury on the element of intent, because it failed to inform the jury that the government needed to prove that he intended to "'advance or further the object of the conspiracy.'" Aplt's Br. at 16 (quoting, with modification, *United States v. Blair*, 54 F.3d 639, 642 (10th Cir. 1995)) (further internal quotation marks

-6-

omitted). However, the quoted language is no more than a paraphrase of what was already in the court's instruction, which required the jury to find that Mr. Hall "knew the essential objective of the conspiracy," "knowingly and voluntarily participated" in the conspiracy, and "intended to act . . . for [the coconspirators'] shared mutual benefit within the scope of the conspiracy charged." Rec. vol. II, doc. 311, at 18. We fail to see how the jury could find those elements but not find that Mr. Hall "intended to advance or further the object of the conspiracy." If one voluntarily participates in a conspiracy while knowing its objectives, one must intend to further those objectives. One who does not intend to further the objectives could not be described as "voluntarily" participating in the conspiracy or "intend[ing] to act . . . for [the coconspirators'] shared mutual benefit within the scope of the conspiracy." Mr. Hall's brief does not explain what difference his proposed instruction could have made in this case, nor can we.

Mr. Hall also argues that the district court's instruction defining "knowingly" misled the jury because it omitted the word "intentionally." The court's instruction required, however, that the jury find that "he was conscious and aware of his action, realized what he was doing or what was happening around him, and did not act because of ignorance, mistake, or accident." *Id.* at 23. While Mr. Hall was on permissible grounds to suggest that the district court employ one of this Circuit's pattern instructions, he has not explained what the word "intentionally" would have added in the context of this case. *See United*

*States v. Triana*, 477 F.3d 1189, 1196 (10th Cir. 2007) (finding that the district court did not abuse its discretion, in part, because the defendant's proposed instruction could not have affected the verdict). Moreover, we note that other circuits have approved definitional instructions for *knowingly* with substantially similar language. *See United States v. Lawson*, 780 F.2d 535, 542 (6th Cir. 1985) ("The word knowingly means that a defendant realized what he was doing and was aware of the nature of his conduct."); Pattern Criminal Federal Jury Instructions for the Seventh Circuit, No. 4.06 (1999) ("When the word 'knowingly' . . . is used in these instructions, it means that the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake or accident."); Ninth Cir. Crim. Jury Instr. 5.6 (2000) ("An act is done knowingly if the defendant is aware of the act and does not act [or fail to act] through ignorance, mistake, or accident . . . ."); *see also* Model Penal Code § 2.02(2)(b)(i) ("A person acts knowingly with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist . . . ."). The district court did not err in giving its "knowingly" instruction.

Finally, Mr. Hall challenges the district court's rejection of his proffered instruction on specific intent, arguing that doing so relieved the government of its duty to prove the *mens rea* required to be convicted of the crimes. He also

contends that by rejecting the instruction the court denied him his constitutional right to present a defense, namely that he was too impaired to form the requisite specific intent. But there is no need for such an instruction if the other instructions properly inform the jury regarding the elements of the charged offenses, and, as we have seen, the jury was so informed. In addition, the jury was instructed on voluntary intoxication. In that circumstance, a specific-intent instruction can only create mischief. As we recently observed, the terms *specific intent* and *general intent* are ambiguous and their use is often confusing, requiring "further elaboration . . . to clarify precisely what the accused must know and intend." *United States v. Teague*, 443 F.3d 1310, 1319 (10th Cir. 2006); *see United States v. Zunie*, 444 F.3d 1230, 1233–34 (10th Cir. 2006). The Supreme Court has suggested that rather than attempt to define these terms, "[a] more useful instruction might relate specifically to the mental state required under" the particular statute in question. *Liparota v. United States*, 471 U.S. 419, 433 n.16 (1985). Here, the district court did just that. It acted wisely in rejecting the proffered instruction.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment below.


ENTERED FOR THE COURT


Robert H. Henry
Chief Circuit Judge