TORRUELLA, Circuit Judge
(Concurring in part and Dissenting in part).
I dissent from the majority’s conclusion that Appellant Mark David Dyer (“Dyer”) was properly sentenced under U.S.S.G. § 2G2.4(c)(2) for possession of child pornography with intent to traffic. I write separately to state my conclusion that § 2G2.4(c)(2) requires specific intent to traffic in child pornography and to note that the facts of this case fail to establish that Dyer exhibited specific intent to traffic in child pornography. I join the majority in rejecting Dyer’s claim that the sentencing court violated his Sixth Amendment right to confront the witnesses presented against him.
I. U.S.S.G. § 2G2.4(c)(2) requires specific intent
The determination of the sentence that should be applied to Dyer’s conviction for possession of child pornography hinges upon an interpretation of the term “intent to traffic” within the purview of § 2G2.4(c)(2). The majority interprets the term “intent to traffic” to require general intent in the sense of knowledge, and not specific or purposeful intent. I respectfully disagree with this interpretation.
During the sentencing proceedings Dyer argued that he had no intention to distribute the images he possessed and that he did not have “an actual intention for anybody else to receive those images.” The government, on the other hand, contended that Dyer possessed the images with intent to traffic. On the basis of Dyer’s arguments and taking into consideration the government’s position, the district court concluded that Dyer’s actions met the requirements of § 2G2.4(c)(2).[1] On appeal, Dyer argues that the government failed to show that he acted with specific *533 intent to traffic in child pornography and the government has not contested Dyer’s assertion that § 2G2.4(c)(2) requires specific intent.
As a threshold matter, the majority claims that Dyer has waived the argument that § 2G2.4(c)(2) requires the government to prove that he acted with specific intent to traffic in child pornography. The majority’s attempt to justify the application of plain error review in this case fails not the least because the record shows that Dyer has argued that he lacked actual or specific intent, but because it is clear that the government never argued that § 2G2.4(c)(2) requires general intent to traffic. Thus, the government never put the district court in position to decide whether general intent suffices to apply § 2G2.4(c)(2). The majority therefore errs when it faults Dyer for not developing his specific intent argument, even though Dyer has argued that he lacked specific intent and the government never claimed that general intent suffices to apply § 2G2.4(c)(2). I therefore cannot partake in the majority’s assertion that this court’s interpretation of the mens rea required by § 2G2.4(c)(2) is controlled by plain error analysis.
The distinction between general and specific intent is sometimes difficult and at times elusive. See United States v. Bailey, 444 U.S. 394, 403, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980)(acknowledging the difficulty courts face in defining the mens rea required for a particular crime and discussing the different interpretations of general and specific intent). But it is critically important in a case like this where the sentence to be imposed on one convicted of possessing child pornography depends on the state of mind with which he possessed said material.[2]
A specific intent crime is one “committed voluntarily and purposely with the specific intent to do something the law forbids.” United States v. Blair, 54 F.3d 639, 642 (10th Cir.1995)(internal quotation marks omitted). It requires more than a knowing violation of the law. United States v. Kimes, 246 F.3d 800, 806 (6th Cir.2001). The defendant must act with a bad purpose or with the objective of committing the act prohibited by the law. See Blair, 54 F.3d at 642; United States v. Kleinbart, 27 F.3d 586, 592 n. 4 (D.C.Cir.1994). In contrast, a general intent crime requires the knowing commission of an unlawful act. Kleinbart, 27 F.3d at 592. The defendant must act “voluntarily and intentionally, and not because of mistake, inadvertence or accident.” Blair, 54 F.3d at 642.
The majority provides several arguments to support its conclusion that the term “intent to traffic” under § 2G2.4(c)(2) requires general intent. The majority claims that the Sentencing Commission *534 chose not to use language that would require specific intent and that both the legislative history of the panoply of statutes that criminalize distribution and trafficking of child pornography, and the “general considerations” of criminal intent support the conclusion that § 2G2.4(c)(2) requires general as opposed to specific intent. Regrettably, the majority misapprehends the text of the Guidelines, ignores their clear mandate, and misapplies the “general considerations” of criminal law and intent.
First, the plain language of § 2G2.4(c)(2) reveals that the Commission required specific intent in order to find that one convicted for possession of child pornography should be sentenced under U.S.S.G. § 2G2.2, which is the trafficking Guideline. By employing the term “intent to traffic,” the Sentencing Commission chose language that has been interpreted by several of our sister courts to require specific intent. Kimes, 246 F.3d at 808 (explaining that when Congress intends to create a specific intent crime it does so explicitly by employing, for example, the term “with intent to”); see also United States v. Welch, 327 F.3d 1081, 1095 (10th Cir.2003)(interpreting the Travel Act, 18 U.S.C. § 1952, and holding that by requiring an act with “intent to ... promote ... or facilitate the promotion ... of an unlawful activity,” the statute required specific intent or proof that the defendant acted with the objective of promoting some unlawful activity). For example, the federal statute that criminalizes the knowing use of unauthorized access devices “with intent to defraud,” 18 U.S.C. § 1029(a)(2), has been interpreted to require specific intent to defraud. United States v. Ismoila, 100 F.3d 380, 387 (5th Cir.1996).[3] Similarly, in the drug-trafficking context, we have consistently held that to prove possession with intent to distribute in violation of 21 U.S.C. § 841, the government must establish that the defendant knowingly and intentionally possessed a controlled substance with specific intent to distribute. United States v. García-Carrasquillo, 483 F.3d 124, 130 (1st Cir.2007); United States v. López-López, 282 F.3d 1, 19 (1st Cir.2002).
Additionally, the structure of § 2G2.4(e)(2) and its interaction with § 2G2.2 bolster the conclusion that the Sentencing Commission included a specific intent requirement. The Commission added § 2G2.4 to address offenses involving possession of child pornography, as distinguished from trafficking offenses which are covered under § 2G2.2. The Commission also directed that when the offense involves trafficking in child pornography, including possession of said material with intent to traffic, an enhanced sentence should be imposed under the trafficking provisions of § 2G2.2. U.S.S.G. § 2G2.4(e)(2). Put another way, § 2G2.4(c)(2) allows a sentencing court to *535 apply § 2G2.2 to a defendant who has been convicted for possession of child pornography when the government establishes by preponderance of the evidence that the defendant intended to traffic in said material. A requirement of specific intent is thus consistent with the Commission’s endeavoring to separate punishment for possession of child pornography from those offenses that involve trafficking in said material. It also guarantees that only those who are more than mere possessors of child pornography are sentenced under § 2G2.2 and its trafficking provisions.
Secondly, I disagree with the majority’s assertion that a requirement of general intent better comports with the legislative history of the statutes that criminalize trafficking in child pornography. In the majority’s view, the fact that trafficking in child pornography no longer requires proof that the defendant acted with a commercial purpose reveals that motives are irrelevant and that consequently § 2G2.4(c)(2) should be interpreted to require general intent to traffic. In pursuing this argument, the majority conflates the actions that amount to trafficking in child pornography with the mens rea required by the Guidelines. The fact that financial gain or commercial purpose is not necessary to convict an individual for trafficking in child pornography informs our interpretation of the term “traffic” by clarifying the actions that amount to trafficking in child pornography. However, this legislative history does not end our inquiry regarding the mens rea an individual must exhibit to be deemed to possess child pornography with intent to traffic. We are here concerned with whether the defendant possessed child pornography with intent to traffic, not with whether he was moved by an expectation to recoup a profit. The fact that Congress made trafficking in child pornography a crime regardless of whether the defendant was moved by a commercial purpose is not inconsistent with the interpretation that § 2G2.4(c)(2) requires the government to show that the defendant specifically intended to traffic in child pornography.
Thirdly, in my view, the majority misapplies the general considerations of criminal law when it relies on this court’s decision in United States v. Tobin, 552 F.3d 29, 34 (1st Cir.2009) to hold that § 2G2.4(c)(2) requires general intent. Tobin, the majority argues, allows this court to rest on the default assumption or “general consideration” that intent in most crimes means general intent. I disagree. In pursuing this argument, the majority fails to ascertain that although general intent has been held sufficient to meet the mens rea requirement for most crimes, this general principle is ordinarily applied where the criminal statute is silent as to the mens rea required. See, e.g., Carter v. United States, 530 U.S. 255, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000) (concluding that the presumption in favor of scienter only required proof of general intent in federal bank robbery statute that was silent as to the mens rea requirement); Bailey, 444 U.S. at 406-08, 100 S.Ct. 624 (inferring a general intent requirement from federal statute criminalizing escape from federal custody in the absence of language or legislative history regarding the mens rea required for conviction). But where, as here, the plain language of the statutory text includes a mens rea requirement, we need not resort to the general considerations invoked by the majority.
Although general intent may generally be sufficient in most crimes to support a conviction, Bailey, 444 U.S. at 408, 100 S.Ct. 624, we are dealing in this case with a narrow category of crimes that require a heightened level of mental culpability. Therefore, the principle that ordinarily *536 general intent suffices for most crimes does not control our inquiry in this case.
Finally, the majority errs in its reliance on dicta from Tobin to conclude that trafficking in child pornography is inherently bad conduct and therefore knowledge of the consequences of such action satisfies the Guidelines’ mens rea requirement. In Tobin, this court held that a statute which criminalized the making of repeated phone calls with intent to harass required specific intent to harass and further intimated that general intent could be required by a different section of said statute that criminalized obscene calls or calls that involved child pornography. 552 F.3d at 33. The Tobin court was only concerned with interpreting the statute’s section that criminalized the making of repeated phone calls with intent to harass. Therefore, any expressions related to the making of obscene calls or calls involving child pornography constitute dicta that does not bind the court in the present case. In addition, the court in Tobin reached its determination by interpreting the statute as a whole and differentiating between the harms posed by the types of conduct prohibited under it. The court, however, did not rule that when a statute criminalizes actions related to child pornography it should be interpreted to require knowledge as opposed to purpose. Tobin is therefore scant authority for the majority’s interpretation that § 2G2.4(c)(2) only requires general intent.
In interpreting § 2G2.4(c)(2) I am guided by the principle that the statute’s plain language is the starting point of our interpretation. Staples v. United States, 511 U.S. 600, 605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)(stating that the language of a criminal statute is the starting point of the court’s interpretation of a criminal statute); Carter, 530 U.S. at 271, 120 S.Ct. 2159 (stating that the canons of statutory interpretation require courts to first examine the statutory text). As has been seen, by employing the words “with intent to traffic,” the Commission chose language that has been interpreted to require specific intent and the structure and purposes of the Guidelines support this conclusion. I would therefore hold that in order to sentence one convicted for possession of child pornography pursuant to § 2G2.4(c)(2), the government must prove beyond a reasonable doubt that the defendant possessed child pornography with specific intent to traffic in said material.
II. The facts are insufficient to conclude Dyer exhibited specific intent to traffic
Although the term “traffic” is not defined in the Guidelines, it encompasses both buying and selling commodities for money or exchanging commodities by barter. See United States v. Paul, 274 F.3d 155, 163 (5th Cir.2001). Evidence that a defendant traded pictures online or sent and received images via the Internet has been found sufficient to constitute trafficking under § 2G2.4(c)(2). United States v. Bender, 290 F.3d 1279, 1285 (11th Cir.2002)(convicted defendant admitted that he had traded pictures online, and the evidence showed that he had sent child pornographic images to other users online); United States v. Johnson, 221 F.3d 83, 98 (2d Cir.2000)(finding that trafficking occurred where defendant admitted he sent and received child pornography over the Internet). Trafficking has also been found where the defendant not only downloaded child pornography onto his computer, but also uploaded child pornographic images in order to join a pornographic website, United States v. Groenendal, 557 F.3d 419, 421, 424 (6th Cir.2009), and where defendant admitted he traded pornography over the Internet and the evidence showed he sent explicit photographs to another individual and agreed to ex *537 change videos with an undercover agent, United States v. Jordan, 111 Fed.Appx. 65, 68 (2d Cir.2004).
These cases show that in order to find that a defendant trafficked in child pornography, the government must prove that the defendant engaged in affirmative actions to exchange or barter in child pornography. These actions include, for example, receiving and sending child pornography. See United States v. Parmelee, 319 F.3d 583, 594 (applying § 2G2.4(c)(2) to a defendant convicted for possession of child pornography where the evidence established that defendant stored pornographic images on recordable compact discs which he intended to barter with other people for programs or services).
The facts of this case show that Dyer used the file-sharing application LimeWire to download child pornography; he knew that when files were downloaded from Li-meWire the program automatically saved the files in a shared folder that was potentially available to other users; and he failed to remove the files to make them unavailable for sharing. It is thus clear that Dyer knowingly downloaded child pornography through LimeWire and that he understood that LimeWire automatically saves images in a shared folder. But these actions do not show he purposely sought to trade, exchange, or barter in child pornography or that he specifically intended to engage in the sort of activities that have been held to amount to trafficking in child pornography.
The critical factor to discern whether Dyer intended to traffic child pornography via LimeWire is not whether he had knowledge of how LimeWire works in terms of file-sharing, but rather whether by using LimeWire to download child pornography Dyer intended to traffic in said items. We lack proof that Dyer used Li-meWire with the objective of offering the images for barter or exchange with others. We similarly lack evidence that Dyer sought to engage in an active exchange of images of child pornography with the purpose to receive further images in return. Moreover, the evidence actually established that Dyer had not traded any images over the Internet via e-mail, chat-rooms, bulletin boards, or newsgroups.
Absent proof that Dyer allowed Lime-Wire to keep images in a shared folder with the purpose of engaging in an exchange of images, I cannot partake in the majority’s conclusion that the sentencing court properly applied § 2G2.4(c)(2). Specific intent in this case is inextricably bound to affirmative actions to traffic in child pornography. In my view, use of LimeWire with knowledge of its automatic file-sharing features and Dyer’s failure to disable the sharing feature is insufficient to conclude that Dyer exhibited specific intent to traffic absent evidence that he took additional actions to offer the images for exchange with the expectation that he would receive further commodities in return.
I also note my concern with the majority’s efforts to equate intent to share with intent to traffic. Although the majority claims it is not holding that mere use of LimeWire amounts to trafficking in child pornography, its interpretation that the “crucial acts separating possession from trafficking involve intent to share images of child pornography with others,” threatens to do just that. While use of a file-sharing program may provide circumstantial evidence of intent to traffic, a finding that there is specific intent to traffic requires more than knowing use of a file-sharing program. It requires proof that the defendant intended to engage in an exchange of commodities or goods with the expectation to receive some type of commodity in return. The inference that shar *538 ing is tantamount to trafficking lowers the threshold of the actions that have been held to amount to trafficking and leads to the imposition of criminal liability for trafficking where the user has not exchanged commodities by barter.
For these reasons, I respectfully dissent from the determination that Dyer was correctly sentenced under § 2G2.4 (c)(2).
III. Confrontation Clause
Finally, I join the majority in rejecting Dyer’s claim that the sentencing court relied on Agent Lechner’s grand jury testimony, thereby depriving Dyer of his right to cross-examine Agent Lechner regarding his grand jury testimony. We have to evaluate this claim under the plain error standard of review because Dyer failed to raise the Confrontation Clause issue before the district court. United States v. González-Castillo, 562 F.3d 80, 82 (1st Cir.2009). As the majority states, there is no evidence in the record that the sentencing court relied on Lechner’s grand jury testimony without allowing Dyer to elucidate this testimony at sentencing. Absent an obvious or clear error by the sentencing court, Dyer’s claim that the sentencing court deprived him of his right to confront Agent Lechner regarding his grand jury testimony must therefore fail.
IV. Conclusions
I dissent from the majority’s conclusion that the district court properly sentenced Dyer pursuant to § 2G2.4(c)(2). I would hold that § 2G2.4(c)(2) requires specific intent to traffic and that the facts of this case fail to show that Dyer exhibited specific intent to traffic in child pornography. I concur in the determination that the district court did not violate Dyer’s Sixth Amendment right to confront the witnesses presented against him.

. The majority underscores the fact that the sentencing court never interpreted the term intent within the purview of § 2G2.4 (c)(2). The majority also concludes that the district court did not plainly err when it concluded that Dyer's actions met the Guideline's intent requirements. In so concluding, the majority assumes that the district court inferred a general intent requirement from § 2G2.4(c)(2). However, in my view, the government’s failure to argue that general intent suffices in this case, reveals that the district court interpreted § 2G2.4(c)(2) in light of Dyer’s argument that he lacked actual or specific intent to traffic. The district court therefore did not hold, as the majority does today, that general intent suffices to sentence Dyer under § 2G2.4(c)(2).

. The majority argues that the distinction between specific and general intent is not critical in this case because we are not concerned with defining the elements of a crime to separate wrongful and innocent conduct. The majority further suggests that the leeway sentencing judges enjoy in considering past uncharged conduct bolsters the conclusion that general intent satisfies the mens rea required by § 2G2.4(c)(2). I fail to ascertain why we should disregard the distinction between specific and general intent when we interpret the mens rea established by the Sentencing Guidelines. This distinction is crucial in this case because the less culpable conduct of possession bleeds into the more serious conduct of trafficking on the basis of criminal intent. Bearing in mind that our interpretative task in this case requires us to tread the waters of the “relation between some mental element and punishment for a harmful act,” Morissette v. United States, 342 U.S. 246, 250-51, 72 S.Ct. 240, 96 L.Ed. 288 (1952), it is crucial to carefully scrutinize the level of culpability the Sentencing Guidelines prescribe.

. The majority errs when it relies on the Eighth Circuit’s decision in United States v. Gantos, 817 F.2d 41, 42-43 (8th Cir.1987) to argue that specific intent is not ordinarily a prerequisite in criminal offenses. The Court in Gantos reviewed a specific intent instruction that defined specific intent as requiring evidence that the defendant knew that his act violated the law and that he purposely intended to violate the law. Relying on the general principle that ordinarily knowledge that an act violates the law is not an essential element of the offense, Gantos, 817 F.2d at 43, and mindful of the fact that the criminal law does not require knowledge that an act is illegal, wrong, or blameworthy, United States v. Baker, 807 F.2d 427, 429 (5th Cir.1986) (citation omitted), the Gantos court rejected the proposed specific intent instruction. The court thus rejected the proposed instruction on the basis that the statute in controversy did not require knowledge or purpose to violate the law. But contrary to the majority's assertion, the Gantos court did not hold that specific intent is not ordinarily required in criminal offenses.